UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER NOEL, SIMI LINTON, UNITED
SPINAL, a nonprofit organization, THE TAXIS
FOR ALL CAMPAIGN, a nonprofit organization,
504 DEMOCRATIC CLUB, a nonprofit
organization, DISABLED IN ACTION, a nonprofit
organization,

              Plaintiffs,

              v.

NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION, a charter mandated agency, and
DAVID YASSKY, in his official capacity as
chairman and commissioner of the New York City
Taxi and Limousine Commission,

              Defendants,

              v.

COMMITTEE FOR TAXI SAFETY,

              Intervenor-Defendant.

11 Civ. 0237 (GBD)

ECF CASE

# MEMORANDUM OF LAW IN SUPPORT OF COMMITTEE FOR TAXI SAFETY'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Roberta A. Kaplan
Robyn F. Tarnofsky
1285 Avenue of the Americas
New York, New York 10019-6064
Tel:  (212) 373-3000
rkaplan@paulweiss.com
rtarnofsky@paulweiss.com

# TABLE OF CONTENTS

**Page**

Table of Authorities..................................................................................................ii

STATEMENT OF FACTS......................................................................................2

      A.    The Parties in Interest............................................................................2

      B.    New York City Taxicabs........................................................................3

ARGUMENT ...........................................................................................................4

I      THIS COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2) ..........................................................................................4

II     IF THE COURT DENIES INTERVENTION AS OF RIGHT, IT SHOULD EXERCISE ITS DISCRETION AND PERMIT INTERVENTION UNDER FED. R. CIV. P. 24(b) ...............................................................................6

III    THE COMMITTEE'S MOTION IS TIMELY .....................................6

CONCLUSION ........................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

CASES

*Boone* v *Wyman*,
295 F Supp  1143 (S D N Y  1969), *aff'd*, 412 F 2d 857 (2d Cir  1969),
*cert  denied*, 396 U S  1024 (1970) ................................................ 6

*Davis* v *Smith*,
431 F  Supp  1206 (S D N Y ), *aff d* 607 F 2d 535 (2d Cir  1978) ............ 6

*Diduck* v  *Kaszycki & Sons Contractors  Inc* ,
149 F R D  55 (S D N Y  1993) ...................................................... 4

*MasterCard Intern  Inc*  v  *Visa Intern  Service Ass n  Inc* ,
471 F 3d 377 (2d Cir  2006) ......................................................... 6

*Oneida Indian Nation of Wisconsin* v  *New York*,
732 F 2d 261 (2d Cir  1984) ......................................................... 4

*Trbovich* v  *United Mine Workers of America*,
404 U S  528 (1972) .................................................................... 5

OTHER AUTHORITIES

§ 2300 of the New York City Charter ..................................................... 2

Fed R  Civ  P  24(a)(2) ..................................................................... 4

Fed  R  Civ  P  24(b) ........................................................................ 6

Committee for Taxi Safety (the "Committee") seeks to intervene as of right in this action on the specific issue of whether Title II of the Americans with Disabilities Act ("ADA") is applicable to the New York City taxicab industry.[1]  The Committee seeks to prevent the unlawful imposition of new requirements for New York City taxicabs on taxicab owners and managers.

Plaintiffs in this action seek a declaration that the Taxis and Limousine Commission ("TLC") and its Chair David Yassky ("Yassky") have violated the ADA because the majority of New York City taxicabs are not easily accessible to the disabled.

The impact of the requested declaration would be economically devastating to the Committee and its constituents.  The Committee represents taxi medallion owners and New York City-licensed agents that manage and lease taxi cab medallions and vehicles.  If the TLC is required to impose new requirements for taxicabs to comply with the declaration sought in this case, it will be taxi medallion and vehicle owners who actually bear the burden of purchasing new vehicles or modifying old vehicles to comply with the requirements of the declaration.

That the law does not impose any requirement for New York City taxicabs to be accessible to the disabled makes the burden the Committee faces that much higher. The ADA claim made by Plaintiffs is based on the false assumption that New York City taxicabs constitute a public service.  They do not.  Taxicabs are owned and operated by private entities and are therefore exempt from the requirements of Title II of the ADA. The Committee therefore seeks the opportunity to defend itself and its constituents, who

---

[1]    The Committee expresses an opinion on Plaintiffs' other causes of action only to the extent that those claims rely on the false assumption that the City of New York provides taxicab transportation to residents of and visitors to New York City.

will be the parties who will bear the burden of any relief provided under Title II of the
ADA.

## STATEMENT OF FACTS

### A.    The Parties in Interest

Plaintiffs are individuals and entities bringing this claim on behalf of
residents of and visitors to New York City with mobility disabilities who need and want
to use New York City medallion taxis.

Defendant TLC is an administrative agency for the City of New York,
created by § 2300 of the New York City Charter.  The TLC has nine members (known as
"Commissioners"), all of whom are appointed by the Mayor of the City of New York
with the advice and consent of the New York City Council.  The TLC has the power to
act by majority vote.  *Id.* at § 2301.  Its mandate is, inter alia, to regulate the taxi and
limousine industry and to establish "standards for driver safety, standards for equipment
safety and design; [and] standards for noise and pollution control."  N.Y.C. Charter §
2300.  The TLC is responsible for licensing and regulating NYC's medallion yellow
taxicabs, for-hire vehicles (community-based liveries and black cars), commuter vans,
paratransit vehicles (ambulettes), and certain luxury limousines.

Defendant Yassky is sued in his official capacity as the Commissioner,
Chair, and Chief Executive Officer of the TLC.

The Committee intervenes on its own behalf and also as representative of
its adversely affected members, who are taxi medallion owners and New York City-
licensed agents that manage and lease taxi cab medallions and vehicles.   (Beier Decl. ¶

2

2.)[2]  The members of the Committee will be directly injured by a requirement that they

must comply with Title II of the Americans with Disabilities Act.  (*Id.* ¶ 3.)

**B.    New York City Taxicabs**

Taxicabs were first introduced to New York City during the turn of the

20th century.  Although popular among New York City's residents, taxicabs were not

subject to significant regulation until the passage of the Haas Act in 1937.  The Haas Act

established the medallion system for New York taxicabs, which is still in use today.  The

Act's provisions included a limitation on the number of medallion licenses (and

therefore, taxicabs) to the number that existed at the time.  The effect was to reduce the

supply of taxicabs, such that competition for customers was reduced.

As taxicabs became more popular, the value of medallions increased

dramatically when license holders realized that they were a transferable asset.  (Beier

Decl. ¶ 7.)  There are two types of medallions: corporate and individual.  (*Id.* ¶ 8.)

Corporate medallions are typically purchased by investors who are not involved in the

management of the taxicab operation.  (*Id.* ¶ 8.)  Individual medallions are purchased by

taxicab drivers.  (*Id.* ¶ 8.)  Currently, corporate medallions can sell for approximately

$950,000 to $1,000,000.  (*Id.* ¶ 8.)  Individual medallions can sell for approximately

$700,000.  The value of medallions have historically increased almost every year.  (*Id.* ¶

8.)

Today, taxicab vehicle and medallion owners are invested in over 13,000

medallions and vehicles, all of which they own independently of New York City.  (*Id.* ¶

9.)  While the TLC licenses and regulates the taxicab industry, it is the taxicab vehicle

---

[2]    "Beier Decl." refers to the Declaration of David L. Beier dated November 18, 2011.

and medallion owners who purchase, manage, and ultimately operate the vehicles.  (*Id.* ¶ 9.)

Most of the vehicles currently used as taxicabs are not accessible to the disabled.  (*Id.* ¶ 10.)  To make them accessible, taxicab vehicle and medallion owners would incur substantial costs that would devastate the taxicab industry.  (*Id.* ¶ 10.)

## ARGUMENT

### I

### THIS COURT SHOULD GRANT
### INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2)

Under settled law, a party has a right to intervene in an action where:  (1) it has an interest in the subject matter of the action; (2) the disposition of the action as a practical matter may impair or impede the movant's ability to protect that interest; and (3) the existing parties cannot represent the interest adequately.  Fed. R. Civ. Proc. 24(a)(2); *Oneida Indian Nation of Wisconsin* v. *New York*, 732 F.2d 261, 263-64 (2d Cir. 1984); *Diduck* v. *Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993).  The Committee easily satisfies each of these elements.

The Committee has a substantial interest in the outcome of the ADA cause of action at issue in this case.  The Committee's constituents own the vehicles at issue here.  (Beier Decl. ¶ 11.)   The Committee's interest will clearly be impacted by the outcome of this action.  If the current mix of taxicab vehicles is declared to violate the ADA, it will be the Committee's constituents who are forced to purchase new taxicabs that accessible to the disabled.  (*Id.* ¶ 12.)  The cost to the taxicab vehicle and medallion owners would be so significant that it could force some out of business and result in a precipitous reduction in profits for most.  (*Id.* ¶ 12.)  Under Title III of the Americans

4

with Disabilities Act, taxicab vehicle and medallion owners should only be forced to incur this expense if accessibility to the disabled is "readily achievable."[3]  In this case, the extreme financial impact to taxicab vehicle and medallion owners is not readily achievable.

Intervenor's, further, may not be "adequately represented by the existing parties," Fed. R. Civ. P. 24(a)(2), because it, and not the TLC and Yassky, has a direct pecuniary interest in the outcome of this action. *Cf. Trbovich* v. *United Mine Workers of America*, 404 U.S. 528, 539 n.9 (1972).  Moreover, since the TLC and Yassky act as the regulators of the proposed intervenors, their interests are usually not congruent. (Beier Decl. ¶ 5.)  Indeed, with respect to the so-called "Taxi of Tomorrow" at issue in this case, the Committee vehemently opposes the selection of the Nissan NV200 as unworkable and impractical for a number of reasons, including but not limited to the vehicle's design, which may lack the durability necessary to sustain rugged New York City driving over a long period of time, and the exclusivity of the contract, which could prevent taxi medallion and vehicle owners from repairing and replacing vehicles at a reasonable cost, and could result in a shortage of taxicabs on the road if Nissan experiences mechanical issues, recalls or manufacturing delays. (*Id.* ¶ 6.)

---

[3]  Plaintiffs assert a claim in this case under Title II of the Americans with Disabilities Act.  That claim is not appropriate because the taxicab industry is privately owned and controlled.  The TLC is responsible for licensing and regulating the taxicab industry, but it does not provide taxicab transportation itself.  (Beier Decl. ¶ 4.)   The challenge in this case – that operating taxicabs are not accessible to the disabled – is not the result of government action.  Rather, it is the Committee's constituents who choose the taxicabs they purchase.  Accordingly, privately-operated "public accommodations" like taxicabs are subject to the rules of Title III, not Title II.

For all these reasons, this Court should grant the Committee's Motion to Intervene as of right.

## II

**IF THE COURT DENIES INTERVENTION AS OF RIGHT,
IT SHOULD EXERCISE ITS DISCRETION
AND PERMIT INTERVENTION UNDER FED. R. CIV. P. 24(b)**

Should the Court find that the Committee is not entitled to intervene as of right, the Committee respectfully submits that the Court should exercise its discretion to permit the Committee to intervene under Fed. R. Civ. P. 24(b) for all of the reasons previously discussed. Indeed, here, given that the parties who will be actually affected by the outcome are currently not participating, the need for permissive intervention is even stronger. *See Davis* v. *Smith*, 431 F. Supp. 1206, 1209 (S.D.N.Y.), *aff'd,* 607 F.2d 535 (2d Cir. 1978) (explaining the circumstances under which permissive intervention under Rule 24(b)(2) is permitted); *Boone* v. *Wyman*, 295 F. Supp. 1143, 1147 (S.D.N.Y. 1969), *aff'd*, 412 F.2d 857 (2d Cir. 1969), *cert. denied*, 396 U.S. 1024 (1970) (granting permissive intervention where intervention of right is denied).

## III

## THE COMMITTEE'S MOTION IS TIMELY

This motion to intervene is timely. To determine whether a motion is timely, courts consider the following factors: "(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness." *MasterCard Intern. Inc.* v. *Visa Intern. Service Ass'n, Inc.*, 471

F.3d 377, 390 (2d Cir. 2006) (quoting *United States* v. *New York*, 820 F.2d 554, 557 (2d Cir. 1987)).

In this case, the Committee seeks only to intervene with respect to the issue of whether taxicab transportation is provided by government entities. This issue arose in the context of the partial summary judgment motion pending before this Court. Thus, the issue on which the Committee wishes to intervene has been a focal point of this litigation for only a few months.

Moreover, there will be no prejudice to the existing parties if this Court grants the Committee's motion. The Committee only seeks to be heard on this specific issue, which the Court has not yet decided. The Committee is not challenging any prior determinations of the Court and is not attempting to relitigate stages of this litigation that have already passed.

Conversely, prejudice to the Committee would be substantial if this motion was denied. As stated above, the impact of the declaration that Plaintiffs seek would fall squarely on the private vehicle and medallion owners who would be required to purchase vehicles accessible to the disabled. Indeed, that the prejudice the Committee would suffer is so immense and that the Committee's views on these issues are so vital to a fair determination of this case are themselves "unusual circumstances" militating for a finding of timeliness.

## CONCLUSION

For all the foregoing reasons, this Court should grant the Committee's

Motion to Intervene as of right, and in the alternative, by permission.


Dated: November 18, 2011
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP


/s/ Roberta A. Kaplan_____
Roberta A. Kaplan
Robyn F. Tarnofsky

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
rkaplan@paulweiss.com
rtarnofsky@paulweiss.com
*Attorneys for Intervenor-Defendant*