# EXHIBIT A

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

THE TAXIS FOR ALL CAMPAIGN, a nonprofit
organization, DR. SIMI LINTON, an individual,
UNITED SPINAL ASSOCIATION, a nonprofit
organization, 504 DEMOCRATIC CLUB, a
nonprofit organization, DISABLED IN ACTION,
a nonprofit organization,

                    Plaintiffs,

-against-

NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION, a charter mandated agency,
MEERA JOSHI, in her official capacity as chair
and commissioner of the New York City Taxi and
Limousine Commission, THE CITY OF NEW
YORK, and BILL DE BLASIO, in his official
capacity as Mayor of the City of New York,

                    Defendants.

No. 11-cv-0237 (GBD)

**PROPOSED STIPULATION AND ORDER OF
SETTLEMENT AND DISMISSAL**

## CLASS SETTLEMENT STIPULATION AND RELEASE

1. **Introduction.**

     1.1    This Settlement Stipulation ("Stipulation") is entered into by Plaintiffs THE TAXIS FOR ALL CAMPAIGN, a nonprofit organization, DR. SIMI LINTON, an individual, UNITED SPINAL ASSOCIATION, a nonprofit organization, 504 DEMOCRATIC CLUB, a nonprofit organization, DISABLED IN ACTION, a nonprofit organization, (collectively the "Named Plaintiffs") individually and on behalf of themselves and a class of individuals as defined in paragraph 3.12, as well as between NEW YORK CITY TAXI AND LIMOUSINE COMMISSION, a charter mandated agency, MEERA JOSHI, in her official capacity as chairman and commissioner of the New York City Taxi and Limousine Commission, THE CITY OF NEW YORK and BILL DE BLASIO, in his official capacity as Mayor of the City of New York (collectively "Defendants.")

     1.2    Defendants and the Named Plaintiffs shall be referred to individually as a "Party" and jointly as "Parties." This document is herein sometimes referred to as this "Stipulation."

     1.3    The procedural history of the suit was as follows:

     1.3.1    Named Plaintiffs filed a complaint against Defendants in the Southern District of New York on January 13, 2011 (the "Lawsuit"). The Lawsuit was assigned to the Honorable George B. Daniels, U.S.D.J.

     1.3.2    Class certification was granted by Order on August 10, 2011. The class encompassed in this certification includes the same members as the Plaintiff Class that is now settling the claims set forth in the Lawsuit.

     1.3.3    Litigation ensued between the Parties between 2011 and the present. After the U.S. Court of Appeals for the Second Circuit reversed a decision of the U.S.D.J., on or about April 5, 2013, Plaintiffs filed a supplemental and amended complaint. Plaintiffs again filed a further supplemental and amended complaint on July 22, 2013. Thereafter, the Parties litigated motions and cross-motions for summary judgment between August and October 2013. The cross motions for summary judgment were argued before the District Court on October 11, 2013.

     1.3.4    The Parties have mutual goals of settling this action to avoid additional protracted and expensive litigation.

     1.3.5    A proposed Stipulation, embodied in a Memorandum of Understanding ("MOU"), dated November 27, 2013 along with an Implementation Agreement, dated November 27, 2013, entered into by the Parties, was filed with the District Court on December 6, 2013, and by Memo Endorsement dated December 9, 2013 the District Court stayed the litigation at the request of all Parties. *See* Dkt No. 161.

2

1.4     Consistent with the MOU, on March 25, 2014, Defendants again published rules proposing to amend Title 35 of the Rules of the City of New York by adding a new section, 58-50.[1]  This proposed amendment describes the agreed-upon phased in transition to a 50% accessible medallion taxi fleet in New York City. A hearing on these rules was held before the TLC on April 30, 2014.

1.5     The TLC rule, codified in 35 RCNY § 58-50 was unanimously adopted by the TLC commissioners in a vote held on April 30, 2014.

1.6     The final rule will be published in the *City Record* in _____ 2014 and will take effect thirty days thereafter.

1.7     The Parties now wish to effectuate a complete resolution and settlement of all claims, disputes, and controversies relating to the allegations of the Named Plaintiffs and the Plaintiff Class, and to resolve their differences and disputes by settling the Lawsuit.

1.8     Plaintiffs believe that a resolution of their claims, as set forth in this Stipulation, accomplishes the goals reasonably achievable through litigation of their claims.

1.9     To that end, upon the Effective Date of this Stipulation, the parties hereby withdraw any pending motions, and stipulate to the action being dismissed with prejudice. The Court will retain jurisdiction over the litigation only as set forth in Paragraphs 8.3 and 11.1.

## 2.     No Admission of Liability.

2.1     By agreeing to and voluntarily entering into this Stipulation, there is no admission or concession by Defendants, direct or indirect, express or implied, that there is any violation of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et. seq.,* or any of its implementing regulations ("ADA"), the federal Rehabilitation Act of 1973, 29 U.S.C. § 794, *et. seq.* (the "Rehabilitation Act"), the New York City Human Rights Law, New York City Administrative Code § 8-101, *et. seq.,* the constitutions or any other statutes, ordinances, rules or regulations of the United States, the State of New York, or any other rules, regulations or bylaws of any department or subdivision of the City of New York.

## 3.     Definitions.

In addition to the terms defined elsewhere in the Stipulation, the following terms shall have the meanings set forth below.

3.1     "Accessible" means a Taxicab Vehicle that includes a ramp and other features to allow a wheelchair user to board safely and independently, if

---

[1] As part of their obligations under the MOU, on or about December 23, 2013, TLC published a proposed rule seeking to amend title 35 of the RCNY to implement the Stipulation.  That publication was superseded by the proposed rules published on March 25, 2014, which became the Rule Adopted when it passed on April 30, 2014.

able to do so, and to ride safely. Such features shall comply with the relevant laws including the U.S. Department of Transportation regulations implementing the Americans with Disabilities Act contained in 49 C.F.R. § 38.23.

3.2     "Class Counsel" means Disability Rights Advocates, including attorneys Sid Wolinsky, Julia Pinover, and Kara Janssen, and Sheppard Mullin Richter & Hampton LLP, including attorneys Daniel Brown and Sarah Aberg.

3.3     "Dispute Resolution" means the process described in Paragraph 7 herein.

3.4     "District Court" means the United States District Court in the Southern District of New York that is assigned to decide matters related to this Lawsuit.

3.5     "Effective Date" means the latter of either: (1) the expiration of the time for filing an appeal from the Court's Final Approval of this Stipulation without the filing of a notice of appeal; or (2) if an appeal if filed, the final resolution of the appeal (including any requests for rehearing and/or petitioners for a writ of certiorari), resulting in final judicial approval of the Stipulation and Order.

3.6     "Final Approval" means the approval of this Stipulation as fair, reasonable, and adequate by a United States District Judge by any final appropriate order.

3.7     "Implementation Agreement" means and refers to the stipulation entitled "Implementation Agreement" signed by the Parties on November 27, 2013, and filed with the District Court on December 6, 2013.

3.8     "Medallion Owner" shall mean any individual or business entity licensed by TLC to own and operate one or more Taxicab Vehicle.

3.9     "Medallion Operators" shall mean Medallion Owners or those who operate taxi medallions, including, but not limited to, taxi agents.

3.10    "MOU" means and refers to the stipulation entitled "Memorandum of Understanding" signed by the Parties on November 27, 2013, and filed with the District Court on December 6, 2013.

3.11    "Notice" means notice to the Named Plaintiffs, Plaintiff Class, and other organizations and individuals who may be interested in the terms of this Stipulation provided in Paragraph 10 herein.

3.12    "Plaintiff Class" means "All persons using wheelchairs or scooters who reside in or visit New York City who are persons with disabilities under the Americans with Disabilities Act, Rehabilitation Act, and/or New York City Human Rights Law and who seek to use New York City medallion taxis" as was Ordered by the District Court on August 11, 2011, and agreed to by the Parties. *See* Dkt No. 33, Order Granting Class Certification.

3.13    "Preliminary Approval" means the initial approval by the District Court of the terms of this Stipulation prior to the Fairness Hearing.

3.14 "Rule Adopted" means title 35 of the Rules of the City of New York ("RCNY"), section 58-50, which the TLC adopted on April 30, 2014, and which will require taxicab medallion owners to utilize Accessible Taxicab Vehicles on a phase-in schedule as set forth therein, until at least 50% of the Taxicab Vehicle fleet is comprised of wheelchair accessible vehicles.

3.15 "Rules of the Taxi and Limousine Commission" or "TLC Rules" means Title 35 of the Rules of the City of New York.

3.16 "Start Date" means the date on which the period for converting 50% of all Taxicab Vehicles to accessible vehicles begins. The Start Date shall be the earlier of either: (1) the date on which there is a commercially available vehicle that also meets the requirements of New York City Administrative Code § 19-533,and which can also be converted to accommodate the transportation of persons who use wheelchairs in accordance with the ADA; or (2) January 1, 2016.

3.17 "Stay of Litigation" refers to the fact that the District Court has deferred and adjourned all future litigation dates and deadlines, as set forth in a December 9, 2013 memorandum endorsement. *See* Dkt. No. 161.

3.18 "Taxicab Vehicle" means a vehicle, yellow in color, bearing a medallion indicating that it is licensed by TLC to carry up to five passengers for hire and authorized to accept hails from persons on the street, as defined in 35 RCNY § 51-03. The set of Taxicab Vehicles operating in the city is referred to herein as the "medallion taxi fleet."

3.19 "Transition Period" means the period of time when medallion owners will transition Accessible vehicles into the medallion taxi fleet, and concluding on the date, no later than December 31, 2020, when 50% of all Taxicab Vehicles in the medallion taxi fleet are Accessible. The Transition Period shall begin on the Start Date.

4. **Conditions Precedent.**

4.1 If, by July 1, 2014, the parties have failed to jointly submit this Stipulation to the District Court and request Preliminary Approval, approval of a Notice of Settlement, and the scheduling of a Fairness Hearing in compliance with Fed. R. Civ. P. 23(e), either Party may request that that the District Court lift the Stay of Litigation so that either party may resume litigation.

5. **Accessibility of New York City's Medallion Taxicab Vehicles.**

5.1 The 50% accessibility requirement for the medallion taxi fleet contemplated by this Stipulation shall be phased in during the course of the regular retirement schedule as set forth in the TLC Rules as of the date this Stipulation is signed, including the Rule Adopted. Accessible Taxicab Vehicles shall be phased in to replace inaccessible Taxicab Vehicles as follows: Commencing on the Start Date, not fewer than 50% of Taxicab Vehicles put in service in any year will be Accessible; provided, however, that if as of any particular date after the Start Date, 50% or more of all Taxicab Vehicles put into service since the Start Date are Accessible, there shall be no violation of this Stipulation if in any given calendar year fewer than 50% of the new Taxicab Vehicles put into service are Accessible

5

5.1.1    Notwithstanding any other provision of this Stipulation, TLC Rules shall ensure that 50% of all Taxicab Vehicles are Accessible vehicles by no later than January 1, 2020; provided, however, that if, as of such date: (1) 50% or more of Taxicab Vehicles put into service since the Start Date are Accessible; and (2) inaccessible vehicles scheduled to be retired and replaced with Accessible vehicles during the year 2020 are sufficient to get to 50% of the total fleet, then the Term of the Stipulation shall be extended to December 31, 2020.

5.2    No Medallion Owner or Medallion Operator will be required to retrofit their Taxicab Vehicles used in taxicab service prior to the date such Medallion Owner or Medallion Operator is required to purchase an Accessible vehicle under the terms of the Rule Adopted.  Medallion Owners and Medallion Operators who are not required under the Rule Adopted to purchase an Accessible Taxicab Vehicle shall be permitted during the Transition Period to purchase any TLC-approved model for use as a taxicab regardless of its accessibility features.

5.3    The 50% accessibility requirement shall not be considered a ceiling on the number of Accessible Taxicab Vehicles that are included in the medallion taxi fleet.

5.4    The commitment to accessibility contained in this document is not linked to the Nissan NV200 Taxi, the Taxi of Tomorrow Program, or to any other particular vehicle or program.

5.5    Notwithstanding any inconsistent or conflicting provision of state or local law, or order of a court of competent jurisdiction, accessible vehicles shall be transitioned in accordance with the Rule Adopted and Paragraphs 5.1 and 5.1.1, *supra*.

6.    **Reporting.**

6.1    Defendants shall provide periodic reports as described in this paragraph (Paragraph 6) concerning compliance with this Stipulation. The District Court will retain jurisdiction for enforcement of the terms of this Stipulation relating to such Reports.

6.2    Defendants shall provide Class Counsel with bi-annual reports (the "Reports") on June 30th and December 31st of each year of the Transition Period.

6.3    The Reports shall detail the total number of: Taxicab Vehicles that have been retired from the medallion taxi fleet during, at a minimum, the prior six-month period, including a sub category for the total number of retired Taxicab Vehicles that were Accessible vehicles; new Taxicab Vehicles that have been brought into the medallion taxi fleet in the prior six-month period, including a sub category for the total number of Accessible Taxicab Vehicles that have been brought into the medallion taxi fleet in the past year; Accessible Taxicab Vehicles in the medallion taxi fleet as of the date of the Report; Taxicab Vehicles scheduled to be retired in the six-month period; Accessible Taxicab Vehicles projected to be brought into the fleet in the next six-month period; Taxicab Vehicles retired since the Start Date of the Transition Period; Accessible Taxicab Vehicles brought into the fleet since the Start Date of the Transition Period and; the total number of Taxicab Vehicles.

7. **Dispute Resolution.**

    7.1    Any disputes relating to this Stipulation shall be resolved according to the following procedure.

    7.1.1    <u>Notification in Writing:</u> Counsel for each Party shall notify counsel for the other Party in writing of any perceived non-compliance by either Party.

    7.1.2    <u>Meet and Confer:</u> Unless otherwise agreed to by the Parties, with respect to any particular dispute, the Parties agree to meet and confer in good faith, within ten (10) business days after a written notification of a dispute is raised (as set forth in Paragraph 7.1.1 *infra*) by any of the Parties to discuss and try to resolve such dispute without the assistance of the Court.

    7.1.3    <u>Submission to Court</u>: Failing resolution of a dispute by the Parties, any Party may, within thirty (30) days of the final meet and confer, submit the issue to the District Court for decision.

    7.1.4    <u>Only Class Counsel</u> and Counsel for Defendants may bring a motion to enforce any provision of this Stipulation, including a motion alleging a violation of the Stipulation for contempt.

8. **Attorneys' Fees and Costs.**

    8.1    By entering into this Stipulation, Plaintiffs do not waive their right to seek attorneys' fees or costs and Defendants do not waive their right to oppose any such request.

    8.2    If, after 60 days from Final Approval, the Parties are unable to reach agreement regarding attorneys' fees and costs, Class Counsel may file a motion for attorneys' fees and costs to be decided by the District Court presiding over this Lawsuit. Defendants will be free to oppose the amount of fees and costs sought in any such motion. The District Court will retain jurisdiction for purposes of adjudicating any claim for fees and costs.

    8.3    The District Court shall retain jurisdiction over this matter for enforcement under Paragraph 11.1 of this Stipulation and for determination and award of attorneys' fees and costs. Attorneys' fees and costs awards shall be determined in accordance with the standards set forth in existing U.S. Supreme Court precedent as to prevailing party status and calculation of such fees and costs.

9. **Preliminary Approval, Objections, Fairness and Final Approval Hearing.**

    9.1    Counsel for the Parties agree that they will take all reasonable steps to ensure that this Stipulation is approved by the Court and becomes effective. Specifically, the Parties will request that the Court grant Preliminary Approval of this Stipulation, schedule a Fairness Hearing, and provide notice in the form and manner approved by the Court to the Plaintiff Class and other potentially interested organizations and individuals of the proposed settlement terms and their opportunity to object thereto, after which the Parties shall move the Court for Final Approval of this Stipulation.

9.2    The complaint shall be dismissed with prejudice upon Final Approval of this Stipulation, subject to the District Court's retention of jurisdiction as described in Paragraphs 8.3 and 11.1 of this Stipulation.

## 10.    Notice.

10.1    Notice shall be provided to the Plaintiff Class and other potentially interested organizations and individuals as agreed upon by the parties and approved by the District Court. Notice of the terms of this settlement shall be in a form agreed to by the Parties and approved by the District Court. Such Notice shall include or be accompanied by a separate document that indicates: (1) the manner, form, and deadline for any objections regarding this Stipulation; (2) the manner in which Class Counsel and Defense Counsel will obtain copies of such objections and provide them to the Court; (3) the manner in which Class Counsel and Defense Counsel will respond to such objections; and (4) the process by which a person who has filed an objection may appear at the Fairness Hearing.

## 11.    Final Approval and Dismissal.

11.1    The Parties agree that the District Court will retain jurisdiction to enforce and administer this Stipulation and for purposes of awarding attorneys' fees and costs, if any.

11.2    If any collateral challenge to the settlement or this Stipulation and Order arises in any court, including a challenge to the Rules Adopted as a result of this Stipulation, the Parties are obligated to inform one another of such a challenge and defend each and every term. The representatives of the Class, Class Counsel, the Defendants, and the Office of the Corporation Counsel each agree that they shall use their best efforts to defend this settlement and Stipulation and Order from any legal challenge, whether by objection, appeal or collateral attack.

11.3    The Parties agree that this Stipulation and Order is subject to Rule 108 of the Federal Rules of Evidence. It is therefore the Parties' understanding that the Stipulation and Order is not admissible to prove Defendants' liability for any of the individual or Class Claims that allege that Defendants violated any laws, rules, or regulations of the United. States, the State of New York, or the City of New York.

11.4    The terms and conditions contained herein do not constitute an official policy or practice of the City of New York for purposes other than enforcement of this Stipulation.

## 12.    Release of Claims.

12.1    Subject to the District Court's retention of jurisdiction under Paragraphs 8.3 and 11.1 of this Stipulation, and effective on the Effective Date, Named Plaintiffs and all Plaintiff Class members and each of their executors, successors, heirs, assigns, administrators, agents, and representatives, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally do fully and finally release, acquit, and discharge Defendants and their present and former parents, subsidiaries, and affiliates, and

8

each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, and assigns (collectively the "Defendant Parties"), as well as all Eligible Medallion Owners, Eligible Medallion Operators, and Eligible Medallion Owner groups and their present and former parents, subsidiaries, and affiliates, and each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, members, medallions operated by those members, and assigns (collectively with the Defendant Parties, the "Released Parties"), from the Class-Wide Released Claims, as defined below in Paragraph 12.2.

12.2    The "Class-Wide Released Claims" are any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or other non-monetary relief,  however described, relating to claims against the Released Parties regarding all claims that have been or could have been asserted in this litigation arising out of the same factual predicate alleged in the First Supplemental Amended Complaint, including the accessibility of Taxicab Vehicles for wheelchair users, that arise prior to and during the Transition Period.

12.3    Subject to the District Court's retention of jurisdiction under Paragraphs 8.3 and 11.1 of this Stipulation, and effective on the Effective Date, Named Plaintiffs, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally do fully and finally release, acquit, and discharge the Released Parties from the "Named Plaintiff Released Claims" as defined below in Paragraph 12.4.

12.4    The "Named Plaintiff Released Claims" are any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for monetary relief or damages regarding all claims that have been or could have been asserted in this litigation arising out of the same factual predicate alleged in the First Supplemental Amended Complaint, including the accessibility of Taxicab Vehicles for wheelchair users, that arise prior to and during the Transition Period.

12.5    Paragraphs 12.2 and 12.4 of the Stipulation apply only to those Medallion Owners and Medallion Owner groups who are Eligible Medallion Owners, Eligible Medallion Operators, and Eligible Medallion Owner groups. "Eligible Medallion Owners," "Eligible Medallion Operators," and "Eligible Medallion Owner groups" mean those Medallion Owners, Medallion Operators, or Medallion Owner groups, including their current or future members and medallions operated by those members, who agree to enter into a covenant not to object to this Stipulation or otherwise challenge the implementation of this Stipulation, the MOU, or the Implementation Agreement in any way, including in any state or federal court.  The Eligible Medallion Owners, Eligible Medallion Operators, and Eligible Medallion Owner groups who are covered by these provisions also agree to enter into a covenant not to challenge the Rule Adopted in any way, including in any state or federal court. The Eligible Medallion Owners, Eligible Medallion Operators, and Eligible Medallion Owner groups who are entitled to the releases set forth in Paragraphs 12.2 and 12.4 of this Stipulation shall be all entities who notify both Class Counsel and Defense Counsel of their intent to so covenant by no later than ten days after this Stipulation is signed. A

separate document reiterating the terms of such covenant and the signatures of both Parties as well as all Eligible Medallion Owners, Eligible Medallion Operators, and Eligible Medallion Owner groups shall be in a form agreed to by the Parties.

12.6    Any Medallion Owner, Medallion Operator, or Medallion Owner group who directly or collaterally attacks, objects to, or otherwise challenges this Stipulation or the Rule Adopted, shall not be released in the manner described in Paragraphs 12.2 and 12.4 of the Stipulation, regardless of whether that Medallion Owner, Medallion Operator, or Medallion Owner group initially entered into the covenant anticipated by Paragraph 12.5 of this Stipulation so as to be an Eligible Medallion Owner, Eligible Medallion Operator, or Eligible Medallion Owner group.

13.    **Entire Stipulation.**

13.1    This Stipulation, along with the MOU and Implementation Agreement, contain all the stipulations, agreements, conditions, promises, and covenants among Defendants, the Named Plaintiffs, and the Plaintiff Class, regarding matters set forth in it and supersedes all prior or contemporaneous stipulations, drafts, representations, or understandings, either written or oral, with respect to the subject matter of the present Stipulation.

14.    **Partial Unenforceability**

14.1    If any provision of this Stipulation, the Rule Adopted, the MOU, or the Implementation Agreement is rendered unenforceable in whole or in part for any reason, the Parties agree, within 10 business days of such a determination of unenforceability, to meet and confer in good faith in order to fashion an alternative provision or mechanism to replace such part as has been found unenforceable.

14.2    If the Parties are unable to reach agreement on such alternative provision, either Party may utilize the dispute resolution process contained in Paragraph 7.1.3 of this Stipulation.

14.3    In the event that resort to the Court is made in accordance with Paragraph 7.1.3, either Party may request, and in the discretion of the Court, the Court may grant, a delay of up to 90 days of any deadline set forth in this Stipulation. Nothing in this Stipulation shall be construed as precluding any Party from seeking additional extension of this or any other deadline set forth in this Stipulation or the Court from granting such extensions on good cause shown.

15.    **Communications to Defendants and Class Counsel.**

15.1    Unless otherwise indicated in the Stipulation, all notices or communications required by this Stipulation shall be in writing by facsimile and

U.S. Mail or overnight delivery service addressed as follows, unless counsel for either Party notifies counsel for the other Party in writing of any change:

15.1.1  To Class Counsel:

Julia Pinover
Disability Rights Advocates
40 Worth Street, 10th Floor
New York, NY 10013

15.1.2  To Defendants:

Michelle Goldberg-Cahn
Office of the Corporation Counsel of City of New York
100 Church Street
New York, NY  10007

## 16.  Modification.

16.1    Prior to Final Approval, this Stipulation can only be amended by written agreement of the Parties hereto.  Following Final Approval, no modification of this Stipulation shall be effective unless it is made pursuant to court order.

## 17.  Drafting of this Stipulation.

17.1    This Stipulation is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties.  Whereas all Parties have contributed to the preparation of this Stipulation, it shall not be construed more strictly against one Party than another.

## 18.  Execution by Facsimile and in Counterparts.

18.1    This Stipulation may be executed by the Parties hereto by facsimile and in separate counterparts, and all such counterparts taken together shall be deemed to constitute one and the same Stipulation.

## 19.  Class Action Fairness Act.

19.1    Defendants will provide information concerning the Stipulation in compliance with 28 U.S.C. § 1715, the Class Action Fairness Act (CAFA), to the U.S. Department of Justice and all applicable state Attorneys General offices.

## 20.  Deadlines.

20.1    The Parties recognize that from time to time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, and negotiations with third parties, cause delays in the accomplishment of objectives no matter how well-intentioned and diligent the Parties may be.  Accordingly, with regard to the provisions of this Stipulation that require that certain acts be taken within specified periods, the Parties agree that

11

court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Stipulation cannot be taken within the specified time period, that Party shall promptly notify the other Parties that it anticipates a delay, the reasons for the delay, and offer a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to Dispute Resolution as set forth in Paragraph 7 of this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed,

Dated: New York, NY
      May 30, 2014

DISABILITY RIGHTS ADVOCATES
Counsel for Plaintiffs
40 Worth Street, 10th Floor
New York, New York 10013
(212) 644-8644
Email: jpinover@dralegal.org

ZACHARY W. CARTER
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007
(212) 356-2199
Email: migoldbe@law.nyc.gov

By: _____
Michelle Goldberg-Cahn
Assistant Corporation Counsel

By: _____

_____
    Julia Pinover. Esq.

SO ORDERED:

_____
Hon. George B. Daniels, U.S.D.J

12