UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
THE TAXIS FOR ALL CAMPAIGN, a      x
nonprofit organization, DR. SIMI LINTON,      :    Case no. 11-cv-0237 (GBD)
an individual, UNITED SPINAL
ASSOCIATION, a nonprofit organization,      :    ~~PROPOSED~~ **AMENDED CLASS**
504 DEMOCRATIC CLUB, a nonprofit      **STIPULATION**
organization, DISABLED IN ACTION, a      :
nonprofit organization,

           Plaintiffs,      :

-against-      :

NEW YORK CITY TAXI AND      :
LIMOUSINE COMMISSION, a charter
mandated agency, ALOYSEE HEREDIA      :
JARMOSZUK, in her official capacity as
chair and commissioner of the New York      :
City Taxi and Limousine Commission, THE
CITY OF NEW YORK, and BILL DE      x
BLASIO, in his official capacity as Mayor of
the City of New York,

           Defendants.
----------------------------------------------------------

## AMENDED CLASS SETTLEMENT STIPULATION

This Amended Class Settlement Stipulation (the "Amended Class Stipulation") is made

and entered into by and between: (1) Plaintiffs THE TAXIS FOR ALL CAMPAIGN, a nonprofit

organization; DR. SIMI LINTON, an individual; UNITED SPINAL ASSOCIATION, a

nonprofit organization; 504 DEMOCRATIC CLUB, a nonprofit organization; and DISABLED

IN ACTION, a nonprofit organization, (collectively the "Named Plaintiffs") individually and on

behalf of themselves and a class of individuals as defined in section II(K) below, and (2) NEW

YORK CITY TAXI AND LIMOUSINE COMMISSION, a charter mandated agency ("TLC");

ALOYSEE HEREDIA JARMOSZUK, in her official capacity as chair and commissioner of

TLC; THE CITY OF NEW YORK; and BILL DE BLASIO, in his official capacity as Mayor of

the City of New York (collectively "Defendants"). Defendants and the Named Plaintiffs shall be referred to individually as a "Party" and jointly as "Parties."

## I. RECITALS

This agreement is made and entered into with reference to the following facts:

A. On January 13, 2011, Named Plaintiffs filed a class action against Defendants to challenge the alleged inaccessibility of Defendants' taxi fleet under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq.*), and New York City Human Rights Law (N.Y. City Administrative Code § 8-107, *et seq.*).

B. On August 10, 2011, the Court entered an order certifying the class.

C. Parties filed a Memorandum of Understanding ("MOU"), dated November 27, 2013, and an Implementation Agreement, dated November 27, 2013, with the District Court on December 6, 2013.

D. Consistent with the MOU, Defendants proposed and ultimately amended Title 35 of the Rules of the City of New York in order to codify the phased-in transition to a 50% accessible medallion taxi fleet that was agreed to in the MOU. A public hearing on the proposed rules amending Title 35 was held before the TLC on April 30, 2014, and the rule was finally adopted on April 30, 2014. (*see* 35 RCNY § 58-50).

E. The District Court granted Parties' Motion for Final Approval of the proposed settlement agreement by Order on September 16, 2014. The approved agreement required Defendants to take steps to ensure that 50% of TLC's taxi fleet became accessible to passengers whose mobility disabilities require use of a wheelchair by January 1, 2020. *See* Proposed Stipulation and Order of Settlement and Dismissal, ECF No. 193-2 ("Original Class Stipulation"), § 5.1.1.

F.  The Original Class Stipulation further specified that Defendants would be entitled to an extension up to December 31, 2020, if two conditions were met: "(1) 50% or more of Taxicab Vehicles put into service since the Start Date [we]re Accessible [by January 1, 2020] and (2) inaccessible vehicles scheduled to be retired and replaced with Accessible vehicles during the year 2020 [we]re sufficient to get to 50% of the total fleet." *Id.*

G.  Named Plaintiffs wrote to the Court on July 1, 2020, to advise that they believed that Defendants were not on track to achieve 50% accessibility of the entire taxi fleet by December 31, 2020. *See* Plaintiffs' July 1, 2020 Letter to the Court, ECF No. 272.

H.  Defendants responded that since the effective date of the stipulation (January 1, 2016), 50% of all new taxicab vehicles entering the fleet were wheelchair accessible.

I.  Thereafter, the Parties engaged in negotiations in order to resolve issues identified by Named Plaintiffs in their July 1, 2020 letter to the Court.

J.  As a result of these negotiations, the Parties now wish to enter into an Amended Class Stipulation to supplement and govern further execution of the obligations set forth in the Original Class Stipulation and to otherwise resolve all disputes that have arisen in the course of the implementation of those obligations. This Amended Stipulation explicitly incorporates the Original Class Stipulation, and all provisions not otherwise specifically addressed herein remain in effect.

## II.  DEFINITIONS

For purposes of this Amended Class Stipulation, the following terms have the following definitions; any terms not specifically noted otherwise are defined in accordance with the Definitions section of the Original Class Stipulation.

A.  "Accessibility Laws" means state and federal laws and regulations, including, without limitation, the following: Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* and all of its implementing regulations and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* and all of its implementing regulations.

3

B.  "Accessibility Trainings" means curriculum produced by Defendants to train TLC
Licensed Drivers on the proper use of Wheelchair Accessible Taxicab Vehicles and
transporting passengers who use wheelchairs. This curriculum encompasses, but is not
limited to, any written technical skills and instructional standards, visual materials such
as videos or handouts utilizing visuals, and any in-vehicle trainings and/or hands-on skills
assessments conducted by non-party educational providers under the oversight of TLC as
part of the Training.

C.  "Accessible Taxicab Vehicle" means a Taxicab Vehicle that includes a ramp and other
features to allow a wheelchair user to board safely and to ride safely. Such features shall
comply with the relevant Accessibility Laws, including the U.S. Department of
Transportation regulations implementing the Americans with Disabilities Act contained
in 49 C.F.R. § 38.23.

D.  "Active Medallions" means all issued medallions that are currently affixed to Taxicab
Vehicles by Medallion Owners and Operators and that are not currently placed into
Storage with TLC by their Medallion Owners or Operators.

E.  "Authorized Medallions" means all Medallions issued by the TLC, which is the total of
Active Medallions and Inactive Medallions.

F.  "Class Counsel" means, collectively, the law firm of Disability Rights Advocates and the
law firm of Sheppard, Mullin, Richter and Hampton, LLP.

G.  "Dispute" or "Disputes" means any dispute relating to any violation of or failure to
perform any of the provisions of either this Amended Class Stipulation or the Original
Class Stipulation and/or disputes between the Parties concerning the interpretation,

4

implementation, monitoring, compliance, and modification of either this Amended Class Stipulation or the Original Class Stipulation.

H. "Inactive Medallions" means all medallions that are placed into Storage with TLC by Medallion Owners and Operators and are not currently affixed to a Taxicab Vehicle.

I. "Medallion" means the numbered plate originally issued by TLC and affixed to the outside of a Taxicab as physical evidence that the Taxicab has been licensed to operate as a Medallion Taxicab.

J. "Medallion Owner" means any individual or business entity licensed by TLC to own and operate one or more Taxicab Vehicles.

K. "Medallion Operators" means Medallion Owners or those who manage taxi medallions, including, but not limited to, taxi agents.

L. "Plaintiff Class" means "[a]ll persons using wheelchairs or scooters who reside in or visit New York City who are persons with disabilities under the Americans with Disabilities Act, Rehabilitation Act, and/or New York City Human Rights Law and who seek to use New York City medallion taxis" consistent with the Order issued by the District Court on August 11, 2011. *See* Dkt No. 33, Order Granting Class Certification.

M. "Storage" means the process of temporarily surrendering a Medallion, either voluntarily or involuntarily, to the TLC, during which time the Medallion is not affixed to a Taxicab Vehicle and cannot be used to provide taxicab service.

N. "TLC Licensed Driver" means a driver licensed by TLC to drive a Medallion Taxicab, Street Hail Livery Vehicle, or For-Hire Vehicle.

O. "TLC Rules" means Title 35 of the Rules of the City of New York.

P.  "Taxicab Vehicle" means a vehicle, yellow in color, bearing a Medallion issued by TLC indicating that it is licensed by TLC to carry up to five passengers for hire and authorized to accept hails from persons on the street, as defined in New York City Administrative Code § 19-504(l) and 35 RCNY § 51-03.

Q.  "Transition Period" means the period of time that commenced on January 1, 2016, and will conclude when 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles, consistent with the deadlines set forth below in Section III.

### III.   OBLIGATIONS

**A.  Duty to Reach the 50% Wheelchair Accessibility Benchmark by June 30, 2023**

1.  The Transition Period shall be extended to no later than June 30, 2023.  Accordingly, Defendants will ensure that no less than 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than June 30, 2023.

2.  Defendants will further ensure that no less than 50% of all Active Medallions are attached to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than January 1, 2023.

3.  To the extent amendments to the TLC Rules are required or deemed useful to accomplish either of these obligations, Defendants will act as promptly as possible to propose such amendments for consideration by the TLC Commissioners.

4.  The 50% accessibility requirements shall not be considered a ceiling on the number of Accessible Taxicab Vehicles to which medallions may be affixed.

5.  The commitment to accessibility contained in this document is separate and independent from any other vehicle and is not dependent on the approval by the TLC for the use of

any particular Accessible Taxicab Vehicle, including but not limited to, the Nissan NV200 Taxi which had been approved for use under the Taxi of Tomorrow Program.

6.     The obligation to meet the deadlines outlined above shall not be affected by any inconsistent or conflicting provision of state or local law or order of a court of competent jurisdiction.

## B. Duty to Develop Accessibility Trainings

7.     Defendants are in the process of developing and will complete developing Accessibility Trainings to cover all aspects of safely and appropriately transporting passengers who use wheelchairs.  Such trainings will be conducted by third-party providers approved by TLC.

8.     These Accessibility Trainings will include, but not be limited to, topics such as proper securement of both taxi passengers and the wheelchairs themselves. Securement-related trainings will be conveyed through visual aids and demonstrations or appropriate virtual trainings, in addition to written materials, and will incorporate hands-on skills assessments or appropriate virtual assessments to the extent in-person hands-on skills assessments are not feasible due to the ongoing global pandemic (COVID-19) to measure trainees' level of knowledge regarding securements at the conclusion of the training. Once the Accessibility Training has commenced, no trainee shall receive a new or renewed license to operate as a TLC Licensed Driver without passing this assessment.

9.     Defendants have provided a copy of the prepared Accessibility Training curriculum to Class Counsel.  Named Plaintiffs provided proposed changes on February 26, 2021. Within thirty days of finalizing the Accessibility Training curriculum and no later than

June 1, 2021, Defendants shall provide Class Counsel with a written overview setting forth which proposed changes were accepted or rejected.

10.     All future Accessibility Trainings or proposed material changes to the Accessibility Trainings, including Accessibility Trainings incorporated into any future renewal course, shall be submitted to Class Counsel in order to permit Named Plaintiffs to have the opportunity to review and comment on the Trainings within thirty days of their development. Class Counsel shall have thirty days to provide any feedback concerning the future or altered Accessibility Trainings. Defendants shall consider all feedback provided by Class Counsel on behalf of Named Plaintiffs in good faith. Within thirty days of finalizing the future or altered Accessibility Trainings, Defendants shall provide Class Counsel with a written overview setting forth which feedback was accepted or not accepted.  For feedback that was not accepted, Defendants shall provide a brief explanation setting forth the basis for why it was not accepted.

11.     The first Accessibility Training will be conducted on or by December 31, 2021. Commencing January 1, 2022, all applicants for a new TLC Driver's License or renewed TLC Driver's License shall be required to pass a hands-on demonstration of properly using the securements for Accessible Vehicles.

### IV.     REPORTING

12.     Defendants shall provide Class Counsel with bi-annual reports (the "Reports") incorporating the periods of January 1 through June 30 and July 1 through December 31 of each year until the implementation has concluded. Such bi-annual reports shall be due to Plaintiffs by July 10 and January 10 for each period.  Defendants' final Report shall be

provided to Class Counsel on July 10, 2023. The District Court will retain jurisdiction for enforcement of the terms of this Stipulation relating to all such Reports.

13.    The Reports shall include the information as set forth in Paragraph 6.3 of the Original Class Stipulation. In addition, the Reports shall include: (i) a total percentage of the Authorized Medallions affixed to Accessible Taxicab Vehicles and (ii) a total percentage of Active Medallions affixed to Accessible Taxicab Vehicles as of the date of the Report.

14.    Within a reasonable period of time after the submission of these Reports, each party shall have the option to request that the other party meet-and-confer in order to discuss the Reports and/or any other aspect of the ongoing implementation.

## V.    GENERAL PROVISIONS

15.    This Amended Class Stipulation contains all the stipulations, agreements, conditions, promises, and covenants among Defendants, Named Plaintiffs, and the Plaintiff Class regarding the matters set forth therein. As such, it supersedes all prior or contemporaneous stipulations (except to the extent that provisions of the Original Class Stipulation govern), drafts, representations, or understandings, either written or oral, with respect to the subject matter of the Amended Class Stipulation.  Each of the Parties understands and agrees that in the event of any subsequent Dispute concerning any of the terms, conditions, or provisions of this Amended Class Stipulation, no Party will be permitted to offer or introduce any oral evidence concerning any oral promises or oral agreements between the Parties relating to the subject matters of this Amended Class Stipulation not included or referred to in this Amended Class Stipulation and not reflected in writing.

9

16.     Nothing in this Amended Class Stipulation, express or implied, is intended to or will

confer upon any person or entity not a party to this Amended Class Stipulation any right,

benefit, or remedy of any nature whatsoever under or by reason of this Amended Class

Stipulation.  Only the Named Plaintiffs and Class Counsel may seek to enforce the terms

of this Amended Class Stipulation, up to and including a motion before the District Court

to resolve any Disputes.  To the extent individual members of the Plaintiff Class have

complaints regarding the City's compliance with the terms of this Amended Class

Stipulation, they must bring them directly to the attention of Class Counsel. Class

Counsel will have the sole and complete discretion to seek to enforce any right, benefit,

or remedy under or by reason of this Amended Class Stipulation.

17.     If any provision of this Amended Class Stipulation is rendered unenforceable in whole or

in part for any reason, the Parties agree, within ten business days of such a determination

of unenforceability, to meet and confer in good faith in order to fashion an alternative

provision or mechanism to replace such part as has been found unenforceable.  Once this

Amended Class Stipulation is approved by the Court, no modification of it shall be

effective unless it is made pursuant to court order.

18.     If Defendants claim that it is impossible to meet a deadline set forth in this Amended

Class Stipulation, due to causes beyond the control of the Defendants as the Parties

acknowledge may happen from time to time despite all Parties' diligent efforts otherwise,

Defendants shall notify Class Counsel in writing. The written notification shall set forth

the basis for the claim that the deadline cannot be met. Parties shall meet and confer

within thirty days of the date of this notification. Either Party will be entitled to seek

relief from the Court following this meet-and-confer.

19.   Nothing in this Stipulation shall be construed as precluding any Party from seeking additional extension of this or any other deadline set forth in this Stipulation or the Court from granting such extensions on good cause shown.

20.   This Amended Class Stipulation is deemed to have been drafted by all Parties hereto as a result of arm's length negotiations among the Parties.  Accordingly, it shall not be construed more strictly against one Party than the other.

21.   Class Counsel reserves the right to seek fees incurred in the course of monitoring Defendants' implementation of both the Original Class Stipulation and this Amended Class Stipulation, and Defendants and their counsel reserve the right to oppose any such request for fees.

22.   Each of the Parties represents, warrants, and agrees that he, she, or it has the full right and authority to enter into this Amended Class Stipulation and that the person executing this Amended Class Stipulation has the full right and authority to commit and bind such Party.

23.   Unless otherwise indicated in the Amended Class Stipulation, all notices or communications required by this Stipulation shall be in writing by electronic mail, facsimile, U.S. Mail, or overnight delivery service addressed as follows, unless counsel for either Party notifies counsel for the other Party in writing of any change:

> For Plaintiffs:
>
> Stuart Seaborn
> Disability Rights Advocates
> 2001 Center Street, 4th Floor
> Berkeley, CA 94704
> Email:  sseaborn@dralegal.org
>
> For the City:

Michelle Goldberg-Cahn
Assistant Corporation Counsel
Office of the Corporation Counsel of City of New York
100 Church Street
New York, NY  10007
Email:  migoldbe@law.nyc.gov

Any Party may subsequently designate other individuals or entities for receipt of notice.

24.    This Amended Class Stipulation may be executed by the Parties hereto by facsimile and

in separate counterparts.  All such counterparts taken together shall be deemed to

constitute one and the same Amended Class Stipulation. Facsimile and PDF signatures

shall be deemed original signatures for all purposes under this Amended Class

Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed,

Dated:  New York, NY
        March 31, 2021

Stuart Seaborn
Managing Director, Litigation
Disability Rights Advocates
Counsel for Plaintiffs
2001 Center Street, 4th floor
Berkeley, CA 94704
(510) 665-8644
Email:  sseaborn@dralegal.org

James E. Johnson
Corporation Counsel of the City of New
York
By: Michelle Goldberg-Cahn
Assistant Corporation Counsel
Counsel for Defendants
100 Church Street
New York, New York 10007
(212) 356-2199
Email:  migoldbe@law.nyc.gov

12

SO ORDERED:

George B. Daniels, U.S.D.J.

Dated:_____APR 0 1 2021