UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

---

THE TAXIS FOR ALL CAMPAIGN, a nonprofit
organization, DR. SIMI LINTON, an individual,
UNITED SPINAL ASSOCIATION, a nonprofit
organization, 504 DEMOCRATIC CLUB, a
nonprofit organization, DISABLED IN ACTION,
a nonprofit organization,

     Plaintiffs,

-against-

NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION, a charter mandated agency,
MEERA JOSHI, in her official capacity as
chairman and commissioner of the New York
City Taxi and Limousine Commission, THE
CITY OF NEW YORK, and BILL DE
BLASIO, in his official capacity as Mayor of
the City of New York,

     Defendants.

No. 11-cv-0237 (GBD)

---

## PLAINTIFFS' MOTION TO ENFORCE THE CLASS SETTLEMENT STIPULATION AND AMENDED CLASS SETTLEMENT STIPULATION

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................ 1

II. FACTUAL BACKGROUND ................................................................................ 2

    A.    The Class Action Complaint and Settlement ........................................................ 2

        1.    Plaintiffs' Complaint ................................................................................ 2

        2.    The Class Settlement Stipulation – Defendants Agree to Make at Least Fifty-Percent of the Yellow Taxi Fleet Accessible by January 2020 ............................................................................................................... 3

    B.    Defendants Begin to Implement the Settlement Agreement, But Fail To Meet Their Obligations Under the Class Settlement Stipulation ............................ 5

    C.    Defendants Agree in The Amended Class Settlement Stipulation To Reach The Fifty-Percent Accessibility Minimum by January 1, 2023 ............................. 6

    D.    Defendants Breach Their Obligation to Make Fifty Percent of the Taxis Accessible ............................................................................................................. 7

    E.    Plaintiffs Will Continue to Suffer Harm If Defendants Fail to Comply With the Terms of the Amended Class Action Stipulation .................................... 8

III. ARGUMENT ................................................................................................... 10

    A.    Legal Standards and Authority .......................................................................... 10

    B.    Defendants Breached the Amended Class Settlement Stipulation ...................... 11

    C.    The Court Must Enforce the Amended Class Settlement Stipulation .................. 13

    D.    The Court Should Award Attorneys' Fees and Costs .......................................... 14

IV. CONCLUSION ................................................................................................. 15

TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Adams v. Johns-Manville Corporation, et al.*
    876 F.2d 702 (9th Cir. 1989) ................................................................... 14

*Benicorp Ins. Co. v. Nat' Med. Health Card Sys., Inc.*
    447 F. Supp. 2d 329 (S.D.N.Y. Aug. 28, 2006) ....................................... 11

*Breed v. Ins. Co. of North Am.*
    46 N.Y.2d 351 (1978) ............................................................................... 12

*Bryan Whitley v. The City Of Mount Vernon*
    No. 20-cv-9011 (NSR), 2022 WL 17496335 (S.D.N.Y Dec. 8, 2022) ..... 14

*Callie v. Near*
    829 F.2d 888 (9th Cir. 1987) ............................................................. 10, 14

*Charron v. Sallyport Global Holdings, Inc.*
    No. 12cv6837, 2014 WL 7336463 (S.D.N.Y. Dec. 24, 2014) ................... 12

*Dannhauser v. TSG Reporting, Inc.*
    No. 16-CV-00747 (CM) (DF), 2019 WL 2950142 (S.D.N.Y. June 21, 2019) ....... 14

*Dector v. RCI PLBG, Inc.*
    17-cv-2269 (ER), 2023 WL 5352234 (S.D.N.Y. Aug. 21, 2023) ............... 13

*Dietz v. Bouldin*
    136 S. Ct. 1885 (2016) .............................................................................. 10

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*
    716 F.3d 302 (2d Cir. 2013) ..................................................................... 11

*Hendrickson v. U.S.*
    791 F.3d 354 (2d Cir. 2015) ..................................................................... 10

*Independence Project, Inc. v. Ventresca Bros. Constr. Co., Inc.*
    397 F. Supp. 3d 482 (S.D.N.Y. 2019) ...................................................... 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*
    511 U.S. 375 (1994) ............................................................................ 10, 12

*Lockheed Martin Corp. v. Retail Holdings, N.V.*
    639 F.3d 63 (2d Cir. 2011) ....................................................................... 11

*Meetings & Expositions, Inc. v. Tandy Corp.*
    490 F.2d 714 (2d Cir. 1974) ..................................................................... 10

*Pierot v. Marom*
　　172 A.D.3d 928, 929,100 N.Y.S.3d 364 (2d Dep't. 2019) .......................................14

*Reich v. Best Built Homes, Inc.*
　　895 F. Supp. 47 (W.D.N.Y. 1995) .........................................................................11

*Roberson v. Giuliani*
　　346 F.3d 75 (2d Cir. 2003)......................................................................................14

*Salto v. Alberto's Construction, LLC*
　　No. 17-CV-3583, 2020 WL 4383674 (S.D.N.Y. July 31, 2020) ...........................11

*U.S. v. Prevezon Holdings, Ltd.*
　　289 F. Supp. 3d 446 (S.D.N.Y. 2018).....................................................................10

<u>Statutes</u>

29 U.S.C. § 794 ........................................................................................................................2

42 U.S.C. § 12131 ...........................................................................................................2, 3, 15

42 U.S.C. § 12205 .................................................................................................................15

## I.  PRELIMINARY STATEMENT

Almost ten years ago, this Court heralded the parties' historic class settlement agreement in which Defendants promised to make at least fifty percent (50%) of the City's iconic yellow taxi fleet accessible to people who use wheelchairs, stating:

> We should not minimize the importance of this historic moment. Decades from now, most will take it for granted. But this is one of the most significant acts of inclusion since Jackie Robinson joined the Brooklyn Dodgers. It is an act of a city that equally values all of its residents and visitors.[1]

Indeed, more than 98% of the yellow taxi fleet was inaccessible at the time, so the settlement meant a better life for thousands of people excluded from the convenience of hailing a taxi.

The increase in the number of accessible yellow taxis has given thousands of people who use wheelchairs the ability to exercise their right to hail a yellow taxi and travel throughout New York City just like everyone else can. New York City's agreement to make at least fifty percent of the taxi fleet accessible was a meaningful act towards inclusion and equality, and has changed the lives of thousands since its implementation. The accessible yellow taxis now represent the best of New York City and are a model for the rest of the country.

Incredibly, however, almost a decade later, and despite an extension of time to fulfill its obligation under the parties' settlement agreement, Defendants have not only failed to reach the 50% accessibility threshold, but now Defendants are seeking to escape their obligation altogether.

The Class Settlement Stipulation provided class members with access to an important mode of transportation and recognized the civil rights of people with disabilities. There is no legal basis for Defendants to avoid their obligation to abide by the Court-ordered agreement.

Accordingly, Plaintiffs file this motion to enforce the parties' settlement agreement.

---

[1] Declaration of Daniel L. Brown, dated February 20, 2024 ("Brown Decl."), Ex. A.

## II.  FACTUAL BACKGROUND

A.     **The Class Action Complaint and Settlement**

1.     **Plaintiffs' Complaint**

On January 13, 2011, Plaintiffs commenced the above-entitled class action to challenge the alleged inaccessibility of New York City's taxi fleet under Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq*.) ("ADA"), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, *et seq*.) ("Rehabilitation Act"), and the New York City Human Rights Law (N.Y. City Administrative Code § 8-101, *et seq*.)  ("NYCHRL"). (Dkt. No. 1.)

The Complaint alleged that the Taxi and Limousine Commission ("TLC"), in perpetuating policies that established a yellow medallion taxi fleet which was more than 98% inaccessible, impermissibly excluded people with disabilities from a core public transportation system in violation of the ADA, Rehabilitation Act, and NYCHRL. (*Id*.)

On August 10, 2011, the Court entered a Stipulation and Order Granting Class Certification, defining the class as "All persons using wheelchairs or scooters, who reside in or visit New York City who are persons with disabilities under the Americans with disabilities act, rehabilitation act and/or city human rights law and who seek to use New York City medallion taxis."  (Dkt. No. 33.)

On July 12, 2013, Plaintiffs filed a First Amended Supplemental and Amended Complaint (the "Amended Complaint") (Dkt. No. 116.) The Amended Complaint added the City of New York (the "City") and then Mayor Michael Bloomberg, in his official capacity, as Defendants. The Amended Complaint also addressed the fact that the City had entered into agreements to introduce a uniform "Taxi of Tomorrow." *Id.*

On August 29, 2013, Plaintiffs filed a motion for Partial Summary Judgment on the narrow question of whether the chosen "Taxi of Tomorrow" was a van for purposes of the Americans with Disabilities Act. (Dkt. No. 127.)

2.      **The Class Settlement Stipulation – Defendants Agree to Make at Least Fifty-Percent of the Yellow Taxi Fleet Accessible by January 2020**

After years of extensive motion practice, discovery, and appellate review, on December 6, 2013, the parties reported to the Court that they had reached an agreement to resolve the class action claims. Specifically, the parties filed a Memorandum of Understanding ("MOU") and an Implementation Agreement with the District Court. (Dkt. No. 160.) The parties then engaged in extensive further negotiations and ultimately reached agreement on the contours of a settlement. On December 9, 2013, the Court vacated further deadlines and postponed issuance of a decision on pending motions, including Plaintiffs' Motion for Partial Summary Judgment. (Dkt. No. 161.)

Consistent with the MOU, Defendants proposed and amended Title 35 of the Rules of the City of New York in order to codify the phased-in transition to a 50% accessible medallion taxi fleet that was agreed to in the MOU. A public hearing on the proposed rules amending Title 35 was held before the TLC on April 30, 2014, and the rule was finally adopted on April 30, 2014. (*see* 35 RCNY § 58-50.)

On May 30, 2014, the parties entered into a Class Action Settlement Stipulation (the "Class Settlement Stipulation") (Dkt. No. 196-1.)  (Brown Decl., Ex. B.) The Court granted preliminary approval on June 10, 2014 (Dkt. No. 208) and final approval on September 16, 2014. (Dkt. No. 234.) *See also* Class Settlement Stipulation ¶ 11.1 ("The Parties agree that the District Court will retain jurisdiction to enforce and administer this Stipulation.") (Dkt. No. 196-1.)

The Class Settlement Stipulation required Defendants to take steps to ensure that 50% of its taxi fleet became accessible to passengers whose mobility disabilities require use of a wheelchair by January 1, 2020. (*See* Dkt. No. 220-1.)

Defendants would be entitled to an extension up to December 31, 2020, if two conditions were met: "(1) 50% or more of Taxicab Vehicles put into service since the Start Date [we]re Accessible [by January 1, 2020] and (2) inaccessible vehicles scheduled to be retired and replaced with Accessible vehicles during the year 2020 [we]re sufficient to get to 50% of the total fleet." (*Id*.)

The Class Settlement Stipulation provided class members critical relief in the form of a yellow medallion taxi fleet that is 50% accessible to allow them to travel throughout the New York City like everyone else. In various press releases, Defendants acknowledged the importance of the Class Settlement Stipulation. For example, on December 6, 2013, the TLC Commissioner and Chair stated, "[f]or too long, wheelchair users have lacked adequate access to this crucial part of New York's transportation network . . . We at the TLC are thrilled to be able to right this longstanding flaw in a taxi system that is otherwise a source of so much pride for New York."[2] Another TLC Commissioner commented, "[b]y ensuring that 50 percent of our taxi fleet is wheelchair accessible, our City has demonstrated once again that we take care of those most in need and are on the forefront of progressive issues. New York City has always been a model for the rest of the world, and I am hopeful that today's announcement will serve as an example for other cities around the globe." *Id.*

---

[2] Brown Decl., Ex. D., and available at
https://home.nyc.gov/assets/tlc/downloads/pdf/press_release_12_06_13.pdf

This Court also recognized the significance of the Settlement Agreement in a statement distributed at the final approval hearing, stating that it was a "significant act[] of inclusion" and "an act of a city that equally values all of its residents and visitors." (Brown Decl., Ex. A.)

**B.      Defendants Begin to Implement the Settlement Agreement, But Fail To Meet Their Obligations Under the Class Settlement Stipulation**

From January 2016 to late 2019, the City provided quarterly reports on its progress to reach the 50% accessibility requirement. (Brown Decl. ¶ 7.) During this time, people in the disability community applauded the TLC for making more yellow taxis accessible. The Class Settlement Stipulation was an important civil rights victory for the disability community, ensuring they have fundamental access to basic transportation infrastructure. The increased access has been life changing for tens of thousands of members of the Class, allowing residents to live full and productive lives in the City, and visitors to access the many sites and cultural offerings they have previously struggled to see. As a mere example, the attorney for Plaintiffs personally received many messages from people who use wheelchairs, including his brother, about the significant impact on their lives of finally being able to hail a yellow taxi in New York City.  (Brown Decl. ¶ 7.)

At no time prior to 2020 did Defendants ever alert Plaintiffs that they would be unable or unwilling to fulfill their promise to make fifty percent of the yellow taxis accessible. (Brown Decl. ¶ 8.)

However, in January 2020, it appeared that Defendants were not on track to meet the requirements of the Class Settlement Stipulation. (Brown Decl. ¶ 9.) Following discussions with Defendants and delays relating to the COVID pandemic, Plaintiffs wrote to the Court on July 1, 2020, to advise that they believed that Defendants were not on track to achieve 50% accessibility of the entire taxi fleet by December 31, 2020. (*See* Dkt. No. 272.) (Brown Decl., Ex. E.)

Thereafter, the parties engaged in negotiations. During these discussions, Defendants discussed the impact of the for-hire vehicle ("FHV") industry and COVID pandemic on the taxi medallion industry. (Brown Decl. ¶ 9.)

**C.    Defendants Agree in The Amended Class Settlement Stipulation To Reach The Fifty-Percent Accessibility Minimum by January 1, 2023**

On April 1, 2021, the Court ordered the parties' Amended Class Settlement Stipulation (the "Amended Class Settlement Stipulation") (Dkt. 287.) (Brown Decl., Ex. C.) The Amended Class Settlement Stipulation, executed more than a year after the start of the COVID pandemic and well after the emergence of the FHV industry in New York City, explicitly incorporates the Class Settlement Stipulation and all provisions in the Class Settlement Stipulation not addressed in the Amended Class Settlement Stipulation remain in effect. (*Id*. § J.)

The terms of the Amended Class Settlement Stipulation provide that "Defendants will ensure that no less than 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than June 30, 2023. Defendants will further ensure that no less than 50% of all Active Medallions are attached to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than January 1, 2023."  (Dkt. No. 287, § III.A.1, 2.)

Paragraph 18 of the Amended Class Settlement Stipulation provides "If Defendants claim that it is impossible to meet a deadline set forth in this Amended Class Stipulation, due to causes beyond the control of the Defendants as the Parties acknowledge may happen from time to time despite all Parties' diligent efforts otherwise, Defendants shall notify Class Counsel in writing. The written notification shall set forth the basis for the claim that the deadline cannot be met. Parties shall meet and confer within 30 days of the date of this notification. Either Party will be entitled to seek relief from the Court following this meet-and-confer." (Dkt. No 287.)

**D.     Defendants Breach Their Obligation to Make Fifty Percent of the Taxis Accessible**

Without any notice that Defendants would be unable to meet the extended deadlines set forth in this Amended Class Stipulation, on July 26, 2023, Defendants provided Plaintiffs' counsel with a settlement report for the period January 1, 2023 through June 30, 2023, that indicated that the percentage of authorized medallion taxi fleet that consists of wheelchair accessible vehicles was 32 percent, while the total percentage of active medallions affixed to accessible taxicab vehicles was 42 percent. (Brown Decl. ¶ 12, Ex. F.)

On August 2, 2023, Class Counsel wrote a letter to Defendants under the dispute resolution provision of the Amended Class Settlement Stipulation, stating:

> [T]his letter serves as a notification that the City . . . has breached two of its obligations under the Amended Class Settlement Stipulation, ECF NO. 286 ("Amended Class Stipulation"), that supplemented the Original Class Stipulation and was so-ordered by the Court on April 1, 2021, ECF No. 287: (a) the obligation to "ensure that no less than 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than June 30, 2023," *see* § (III)(A)(1); and (b) the obligation to "ensure that no less than 50% of all Active Medallions are attached to Accessible Vehicles in accordance with all applicable Accessibility Laws no later than January 1, 2023," *see* § (III)(A)(2).

(Brown Decl., Ex. G.) In addition, Class Counsel noted that Defendants also breached the Amended Class Settlement Stipulation by having failed to advise Class Counsel that it could not meet the applicable deadlines. (*Id*.)

The parties participated in a meet and confer on August 23, 2023, during which the City made a PowerPoint presentation discussing the impact of the FHV industry and COVID-19. (Brown Decl. ¶ 14.) Following the meet and confer, on October 6, 2003, Class counsel wrote to Defendants proposing an extension of time for Defendants to be in compliance with the Amended Class Settlement Stipulation to June 30, 2024. (Brown Decl., Ex. H.) Defendants never responded to Plaintiffs' proposal for the extension of the deadline. (Brown Decl. ¶ 14.)

On December 22, 2023, Class Counsel wrote to Defendants again, reiterating Plaintiffs' demand that "the City agree to comply with the 50% requirement for both authorized and active medallions by June 30, 2024." (Brown Decl., Ex. I.)

On January 19, 2024, Defendants responded to Plaintiffs, requesting a meet and confer to "discuss their anticipated motion to be relieved from the requirements of the Settlement Agreement and Amended Agreement." (Brown Decl., Ex. J.) Defendants did not dispute that they were in violation of the Class Settlement Stipulation and the Amended Class Settlement Stipulation. (*Id*.) Rather, Defendants bluntly stated that, from their perspective, the requirements of the Class Settlement Stipulation and the Amended Class Settlement Stipulation no longer serve the purpose for which they were intended. (*Id*.) Defendants had clearly indicated their intent to be free from any obligation to make the City's taxis accessible. Plaintiffs were shocked and disappointed by Defendants' letter and about face on their commitments to accessibility. (Brown Decl. ¶ 16.)

On February 16, 2024, Class counsel met by Zoom with Defendants' counsel and representatives. Defendants again confirmed their non-compliance with the Class Settlement Stipulation and the Amended Class Settlement Stipulation and refused to even agree to an extension of time to comply with the 50% requirement for taxi medallions. (Brown Decl. ¶ 17.)

**E.      Plaintiffs Will Continue to Suffer Harm If Defendants Fail to Comply With the Terms of the Amended Class Action Stipulation**

Plaintiffs were forced to bring this action over a decade ago because they and the Class were excluded from enjoying the privilege and right to hail and ride in New York City's iconic yellow taxi, which at the time was only 1.8% accessible. While Defendants have made progress since their historic agreement almost a decade ago, by making at least 32 percent of authorized

medallions wheelchair accessible and 42 percent of active medallions accessible, that progress falls far short of their Court-ordered commitment much less their moral obligations.

As stated in Plaintiffs' various filings in this lawsuit, inaccessible taxis harm riders who require accessible transportation in myriad ways, including deterring some from being productive members of the community. *See* Dkt. 40, ¶ 23 ("The lack of accessible taxicabs likely increases the social isolation of wheelchair users."); Dkt. 43, ¶ 7 ("the lack of transportation options makes it very difficult for me to be a productive member of the community in the way that people who do not use wheelchairs are."); Dkt. 222, ¶ 10 ("The lack of wheelchair-accessible taxis in New York City makes it difficult for me to participate in meetings and in public life."); *see also* Dkt. 43, ¶ 14 ("I've been unable to safely and spontaneously travel at night."). Some Class members had to wheel themselves to the hospital because of the dearth of accessible taxis. (Dkt. 224, ¶¶ 10-11.) Inaccessible taxis also result in high unemployment rates. *See* Dkt. 222, ¶ 12 ("I believe New York City's failure to offer accessible transportation to residents who use wheelchairs has resulted in high unemployment rates for the mobility-disables community here"); *see also* Dkt. 225, ¶ 7 ("Because spontaneous travel is impossible for many individuals with mobility disabilities, they are not as employable because they cannot easily come to the office early, stay late, or go on business travel.").

The City's attempt to "relieve" itself from the Amended Class Settlement Stipulation will result in further and continued harm for Plaintiffs and the class members, which cannot be cured with any monetary relief. It is essential that Defendants comply with the Amended Class Settlement Stipulation so that the Plaintiffs and Class members can enjoy the increased access to the yellow medallion taxi fleet that Defendants promised to provide.

### III. ARGUMENT

**A.    Legal Standards and Authority**

The Court approved the Amended Class Settlement Stipulation on April 1, 2021 (Dkt. No. 331.) Because Defendants still have not satisfied the terms of the Class Settlement Stipulation[3] and Amended Class Settlement Stipulation, this Court maintains jurisdiction over its enforcement. *See* Class Settlement Stipulation ¶ 11.1 ("The parties agree that the district court will retain jurisdiction to enforced and administer this stipulation") and *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378-81 (1994) (noting that a district court has ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees"); *see U.S. v. Prevezon Holdings, Ltd.,* 289 F. Supp. 3d 446, 450 (S.D.N.Y. 2018) ("[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.") (citing *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974)); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987) ("It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it.").[4]

A "motion to enforce a settlement agreement is fundamentally a claim for breach of a contract." *Hendrickson v. U.S.*, 791 F.3d 354, 358 (2d Cir. 2015) (citing *Kokkonen,* 511 U.S. at 381); *Prevezon,* 289 F. Supp. 3d at 450 (settlement agreements are "contracts and must therefore be construed according to general principles of contract law.") (citations omitted); *Reich v. Best*

---

[3] See Amended Class Settlement Stipulation ¶ J ("This amended stipulation, explicitly incorporates the Original Class Stipulation, and all provisions, not otherwise specifically addressed here in remain in effect.").

[4] This Court also has the inherent authority to manage its docket to ensure expeditious settlement implementation and prevent delays. The Supreme Court "has long recognized that a district court possesses inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 136 S. Ct. 1885, 1890 (2016) (citations omitted).

*Built Homes, Inc*., 895 F. Supp. 47, 49 (W.D.N.Y. 1995) ("A settlement, once reached, is a binding contract.").

Under New York law, a breach of contract claim has four elements: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Salto v. Alberto's Construction, LLC*, No. 17-CV-3583, 2020 WL 4383674, at *6 (S.D.N.Y. July 31, 2020). The party seeking to enforce the settlement agreement "has the burden of proof to demonstrate that the parties actually entered into such an agreement." *Id.* at *4 (quoting *Benicorp Ins. Co. v. Nat' Med. Health Card Sys., Inc*., 447 F. Supp. 2d 329, 335 (S.D.N.Y. Aug. 28, 2006)).

**B.    Defendants Breached the Amended Class Settlement Stipulation**

There can be no dispute that that the parties entered into the Class Settlement Stipulation and the Amended Class Settlement Stipulation which were both approved by the Court. (*See* Dkt. Nos. 234, 287.) The terms of the Amended Class Settlement Stipulation unambiguously provide that "Defendants will ensure that (i) no less than 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles . . . no later than June 30, 2023, and (ii) no less than 50% of all Active Medallions are attached to Accessible Taxicab Vehicles . . . no later than January 1, 2023." (Dkt. No. 287, Sections III.A.1, 2.)

"When interpreting a contract [under New York law], the intention of the parties should control, and the best evidence of intent is the contract itself." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013) (internal quotations and citations omitted). The first step in interpreting a contract is to determine whether its language is ambiguous. *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). "Ambiguity must be determined on the face of the contract; extrinsic evidence may not be introduced in an attempt to create ambiguity." *Charron v. Sallyport Global Holdings, Inc.*, No.

12cv6837, 2014 WL 7336463, at *16 (S.D.N.Y. Dec. 24, 2014). The threshold question of whether a contract is ambiguous is an issue of law for this Court to decide.  *See id*.

There is no ambiguity in the Amended Class Settlement Stipulation. When the relevant contractual language has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion," no ambiguity exists. *Breed v. Ins. Co. of North Am.*, 46 N.Y.2d 351, 355 (1978). The Amended Class Settlement Stipulation establishes the clear obligations of Defendants to make the New York City taxicab fleet more accessible and sets a numerical value by which to measure Defendants' compliance with that agreement.

Defendants' failure to achieve the 50% accessibility milestones by January 1, 2023 and June 30, 2023 constitutes a breach of the Amended Class Settlement Stipulation. Not only have Defendants failed to achieve that contractually mandated milestone within the requisite time period, and failed to comply with the contractual mandate to timely notify Class Counsel in writing in advance of the breach, Defendants' January 19, 2024 letter made clear that this breach will continue and Defendants have no intention of even attempting to remedy it.

Plaintiffs agreed to dismiss their Class Action Complaint in exchange for Defendants' agreement to make at least 50% of the yellow taxis accessible. *See Kokkonen,* 511 U.S. at 381 (noting that where a motion is brought to enforce a settlement agreement "part of the consideration of which was dismissal of an earlier federal suit"). Defendants' failure to achieve 50% accessibility of its taxicab fleet continues to have a harmful impact on Plaintiffs and the Class's ability to hail wheelchair accessible taxis and is a travesty of justice.

While Defendants will argue that any harm is lessened by the evolution of ride sharing apps, street hailing and ride sharing are not interchangeable (for example, not all people with

disabilities have or can use smart phone technology), Defendants were aware of the emergence of ride sharing technology when they entered into the Amended Class Settlement Stipulation, and other transportation options have no bearing on Defendants' contractual obligations under the Amended Class Settlement Stipulation.

**C.      The Court Must Enforce the Amended Class Settlement Stipulation**

As explained above, Defendants unilaterally decided, in direct contravention of the terms of the Amended Class Settlement Stipulation, that the obligations that they agreed to in exchange for Plaintiffs' release of their claims no longer serve the purpose for which they were intended and therefore Defendants no longer need to comply with their obligations. The Amended Class Settlement Stipulation contains no provision permitting Defendants to fail to comply with their obligations thereunder.

Defendants have breached their obligation to meet the 50% accessibility milestones under the Amended Class Settlement Stipulation, and the Court must find that Plaintiffs and the Class are entitled to an order enforcing the terms of the Amended Class Settlement Stipulation. *See, e.g., Dector v. RCI PLBG, Inc.*, 17-cv-2269 (ER), 2023 WL 5352234, at * 3 (S.D.N.Y. Aug. 21, 2023) ("the record makes clear that defendants have failed to make their payments as required. In other words, they have breached the terms of the parties' agreements, and the plaintiffs are entitled to enforcement.").

The Court must not countenance Defendants' willful breach of the Amended Class Settlement Stipulation, an agreement relied upon by New York City's residents and visitors who require accessible yellow taxis. Defendants' insufficient progress towards achieving 50% accessibility of its taxicab fleet continues to have a harmful impact on Plaintiffs and the Class's ability to hail taxis.

Accordingly, Plaintiffs request that the Court enforce the Amended Class Settlement Stipulation and order specific performance of its terms. *See Bryan Whitley v. The City Of Mount Vernon*, No. 20-cv-9011 (NSR), 2022 WL 17496335, at *9 (S.D.N.Y Dec. 8, 2022) (granting plaintiff's motion to enforce the Settlement Agreement "insofar as Defendant is obligated to (1) make all payments due under Paragraph 2 of the Settlement Agreement and (2) pay interest pursuant to Paragraph 5 of the Settlement Agreement  . . ."); *Pierot v. Marom*, 172 A.D.3d 928, 929,100 N.Y.S.3d 364 (2d Dep't. 2019) (affirming lower court's award of specific performance when defendants breached the stipulation of settlement.).

Nothing less than specific performance of the Amended Class Settlement Stipulation can remedy this breach and injustice. *Roberson v. Giuliani,* 346 F.3d 75, 83 (2d Cir. 2003) ("In the case of both consent decrees and private settlement agreements over which a district court retains enforcement jurisdiction, the district court has the authority to force compliance with the terms agreed upon by the parties."); *Dannhauser v. TSG Reporting, Inc.,* No. 16-CV-00747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019) ("[A]ncillary jurisdiction confers the authority to force compliance with the terms agreed upon by the parties, whether that entails decreeing specific performance, entering a monetary judgment, or fashioning other appropriate relief.") (internal citations and quotation marks omitted); *Adams v. Johns-Manville Corporation, et al.,* 876 F.2d 702, 707 (9th Cir. 1989) ("a district court is empowered to enforce a settlement agreement through summary proceedings") (citing *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987)). Plaintiffs specifically request an order requiring Defendants to make each and every new medallion a wheelchair accessible taxi medallion until the 50% requirement is met.

**D.     The Court Should Award Attorneys' Fees and Costs**

Plaintiffs commenced this action under the Americans with Disabilities Act, i.e., 42 U.S.C. § 12131 (the "ADA"), which permits the court, in its discretion, to allow the prevailing

party to recover reasonable attorneys' fees and costs. *See* 42 U.S.C. § 12205. Here, the Class

Settlement Stipulation and the Amended Class Settlement Stipulation are enforceable judicial

orders, which the Court has retained jurisdiction over. *See* Amended Class Settlement Stipulation

¶ J; Class Settlement Stipulation ¶ 11.1. *See also Independence Project, Inc. v. Ventresca Bros.*

*Constr. Co., Inc.*, 397 F. Supp. 3d 482, 490 (S.D.N.Y. 2019) ("Under the ADA, consent decrees

may serve as the basis for an award of attorneys' fees.") (quotation omitted). In addition, Class

Counsel reserved the right to seek attorneys' fees "incurred in the course of monitoring

Defendants' implementation of both the Original Class Stipulation and this Amended Class

Stipulation . . ." Amended Class Settlement Stipulation, Section V.21 (Dkt. No. 287).

Accordingly, Plaintiffs reserve their right to seek and itemize their reasonable fees incurred in

connection with bringing this motion.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order:  (i)

enforcing, and directing Defendants to specifically perform under, the Class Settlement

Stipulation and the Amended Class Settlement Stipulation; (ii) granting Plaintiffs attorneys' fees

and costs in bringing this motion; and (iii) granting such other and further relief as the Court

deems just and proper.

Dated: New York, New York
February 21, 2024

Respectfully submitted,

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:     /s/ Daniel L. Brown  
        Daniel L. Brown
        Shin Hahn
        Damani C. Sims

30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 634-3095
dbrown@sheppardmullin.com
shahn@sheppardmullin.com
dsims@sheppardmullin.com

**DISABILITY RIGHTS ADVOCATES**

Stuart Seaborn
2001 Center Street, 3rd Floor
Berkeley, CA 94704
Telephone: (510) 665-8644
sseaborn@dralegal.org

Chloe Holzman
655 Third Avenue, 14th Floor
New York, New York 10017
Telephone: (212) 644-8644
cholzman@dralegal.org

*Attorneys for Plaintiffs*