**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE TAXIS FOR ALL CAMPAIGN, a
nonprofit organization, DR. SIMI LINTON, an
individual, UNITED SPINAL ASSOCIATION,
a nonprofit organization, 504 DEMOCRATIC
CLUB, a nonprofit organization, and
DISABLED IN ACTION, a nonprofit
organization,

                          Plaintiffs,

        -against-

NEW YORK CITY TAXI AND LIMOUSINE
COMMISSION, a charter mandated agency, and
MEERA JOSHI, in her official capacity as
chairman and commissioner of the New York City
Taxi and Limousine Commission, BILL DE
BLASIO, in his official capacity as Mayor of the
City of New York, and THE CITY OF NEW
YORK,

                          Defendants.

:    MEMORANDUM DECISION AND
:              ORDER
:
:        11 Civ. 0237 (GBD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiffs move for this Court to enforce the Class Action Settlement Stipulation ("Original

Settlement Agreement") and Amended Class Settlement Stipulation ("Amended Settlement

Agreement") between the parties after Defendants failed to meet their wheelchair accessibility

obligations: that at least 50% of all Active Medallions[1] are affixed to wheelchair accessible

taxicabs (the "Active Medallion Requirement") and that at least 50% of all Authorized Medallions[2]

---

[1] The Amended Settlement Agreement defines *Active* Medallions as "all issued medallions that are currently affixed to Taxicab Vehicles by Medallion Owners and Operators and that are not currently placed into Storage with TLC by their Medallion Owners or Operators." (ECF No. 287, § II(A).)

[2] The Amended Settlement Agreement defines *Authorized* Medallions as "all Medallions issued by the TLC, which is the total of Active Medallions and Inactive Medallions." (*Id.* § II(E).)

are wheelchair accessible (the "Authorized Medallion Requirement"). (*See* Pls.' Mem. of Law in Supp. Mot. to Enforce ("Pls.' Opening Br."), ECF No. 299, at 11.) As part of their motion, Plaintiffs ask this Court to (1) require Defendants to effectuate an amendment to the New York City Taxi and Limousine Commission's ("TLC") current rule that requires that "50% of all new [taxicabs] affiliated with an unrestricted medallion" be wheelchair accessible, to require 100% until Defendants meet their Active and Authorized Medallion obligations (a "100% Rule"); (2) award them attorneys' fees and costs associated with bringing their motion; and (3) appoint a Special Master to, among other things, "determine what additional steps Defendants can and should take to accelerate the accessibility of yellow taxis." (*Id.* at 14–15; Pls.' Response Letter ("Pls.' June Letter"), ECF No. 335, at 1.)

Defendants cross-move for partial relief from the Amended Settlement Agreement, seeking to avoid the Authorized Medallion Requirement. (*See* Defs.' Mem. in Support of their Cross-Motion for Partial Relief ("Defs.' Opening Br."), ECF No. 305, at 9.) Plaintiffs' motion is **GRANTED** as to enforcement of the Amended Settlement Agreement[3] and attorneys' fees and costs. Plaintiffs' request to appoint a Special Master, (*See* Pls.' June Letter at 3), is denied without prejudice. Defendants' motion is **DENIED**.

## I.    BACKGROUND

On May 30, 2014, the parties entered into the Original Settlement Agreement. (Wolinsky Decl., ECF No. 220, ¶ 7; *id.*, Ex. A ("Original Settlement Agreement"), ECF No. 220-1.) This Court subsequently granted preliminary approval on June 10, 2014, (Order, ECF No. 208), and final approval on September 16, 2014, (Order, ECF No. 234.)

---

[3] Because the Amended Settlement Agreement explicitly incorporates the Original Settlement Agreement, this Court hereinafter refers to the Amended Settlement Agreement only, unless otherwise called for. (*See* Amended Settlement Agreement § I(J).)

Pursuant to the Original Settlement Agreement, Defendants were to ensure that 50% of their taxicab fleet became wheelchair accessible by January 1, 2020. (Original Settlement Agreement § 5.1.1.) However, Defendants could extend this deadline to December 31, 2020 if two conditions were met as of January 1, 2020: (1) 50% or more of taxicabs put into service since the start date were wheelchair accessible and (2) inaccessible vehicles scheduled to be replaced with wheelchair accessible vehicles during the year 2020 were sufficient to reach the requirement that 50% of the total fleet was wheelchair accessible. (*Id.*)

During the period of January 2016 to late 2019, the City of New York tendered quarterly reports reflecting its progress in attempting to reach the 50% accessibility requirements. (Decl. of Brown in Supp. Mot. ("Brown Decl."), ECF No. 300, ¶ 7.) By January 2020, Plaintiffs determined that Defendants were unlikely to timely meet the requirements, (Brown Decl. ¶ 9), and subsequently informed this Court, on July 1, 2020, that Defendants were similarly unlikely to meet the requirements by December 31, 2020. (Brown Decl., Ex. E, ECF No. 300-5.)

This prompted the parties to engage in further negotiations, culminating in the Amended Settlement Agreement so-ordered by this Court on April 1, 2021. (*See* Amended Settlement Agreement, ECF No. 287.) The Amended Settlement Agreement required Defendants to ensure that "no less than 50% of all Authorized Medallions are affixed to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than June 30, 2023" and "that no less than 50% of all Active Medallions are attached to Accessible Taxicab Vehicles in accordance with all applicable Accessibility Laws no later than January 1, 2023." (*Id.* § III(A)(1)–(2).)

Defendants did not meet either requirement by June 30, 2023, reaching only 32% for the Authorized Medallion Requirement and 42% for the Active Medallion Requirement. (Brown Decl. ¶ 12; *id.*, Ex. F, ECF No. 300-6.) Plaintiffs later notified Defendants of their breaches of the

Amended Settlement Agreement, and the parties participated in a meet and confer conference on August 23, 2023 in an attempt to reach a resolution. (*Id.*, Ex. G, ECF No. 300-7.) During the conference, the City of New York presented a PowerPoint slide deck discussing its view of the impact of the for-hire-vehicle industry's growth and the COVID-19 pandemic on its ability to meet the Authorized and Active Medallion Requirements. (Brown Decl. ¶ 14.) The parties left the conference without a resolution.

Following another unsuccessful meet and confer on February 24, 2024, in which the parties discussed Defendants' intention to file a motion to be relieved from the Authorized and Active Medallion Requirements, (Brown Decl. ¶ 17), the parties filed the instant motions now before this Court.

This Court held oral argument on the instant motions on May 7, 2024. During oral argument, it was proposed that Defendants implement a 100% Rule to accelerate compliance with the 50% accessibility requirement. (*See* Oral Arg. Tr., ECF No. 324, at 64:3–19.) To aid this Court in assessing the on-the-ground viability of this proposal, this Court requested that Defendants submit a letter setting forth data contextualizing Defendants' taxicab operations—including, "how many vehicles are being turned in, how many vehicles are on the road, how many vehicles have to be converted in order to meet [the Active Medallion Requirement]"—and how long it would take Defendants to meet the Active and Authorized Medallion Requirements under TLC's current rule versus a 100% Rule. (*Id.* at 77:21–78:13.)

Defendants submitted such a letter on May 21, 2024 ("Defendants' May Letter"), explaining that if they maintain TLC's current 50% rule, they project meeting the Active Medallion Requirement by 2030 but had no timetable for meeting the Authorized Medallion Requirement—conceding that they might reach only 36.5% by 2031. (ECF No. 326, at 3.) Defendants'

assessment of implementing a 100% Rule, however, produced far better expectations: meeting the

Active Medallion Requirement by the end of 2024 and the Authorized Medallion Requirement by

the end of 2028. (*Id.* at 3–4.)

## II.    LEGAL STANDARDS

"A district court has the power to enforce summarily, on motion, a settlement agreement

reached in a case that was pending before it." *BCM Dev., LLC v. Oprandy*, No. 12-573-cv, 2013

U.S. App. LEXIS 1326, at *1 (2d Cir. Jan. 17, 2013) (quoting *Meetings & Expositions Inc. v.

Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974)). "This is 'especially clear where the settlement is

reported to the court during the course of a trial or other significant courtroom proceedings.'" *Lee

v. Grove Grp. Advisors LLC*, No. 1:20-cv-05937 (ALC), 2024 U.S. Dist. LEXIS 35243, at *4

(S.D.N.Y. Feb. 29, 2024) (quoting *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir.

2005)). "Stipulations of settlement are favored by the courts and not lightly cast aside." *AmTrust

N. Am., Inc. v. MBA Network, LLC*, No. 18 Civ. 6241 (PAE) (RWL), 2020 WL 8609020, at *2

(S.D.N.Y. Dec. 2, 2020) (quoting *Hallock v. State*, 64 N.Y.2d 224, 230 (N.Y. 1984)).

"[A] motion to enforce a settlement agreement is fundamentally a claim for breach of a

contract." *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (citing *Kokkonen v.

Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)) (internal quotations omitted); *Barbecho

v. Matrat LLC*, No. 15 CV 00170-LTS, 2021 U.S. Dist. LEXIS 163808, at *3 (S.D.N.Y. Aug. 30,

2021). In deciding a motion to enforce a settlement agreement, the court therefore "applies general

principles of contract law." *Tendilla v. 1465 Espresso Bar LLC*, No. 18-cv-5991 (AJN), 2021 U.S.

Dist. LEXIS 102755, at *4 (S.D.N.Y. June 1, 2021) (citing *Omega Eng'g Inc. v. Omega, S.A.*, 432

F.3d 437, 443 (2d Cir. 2005); *see also United States v. Prevezon Holdings, Ltd.*, 289 F. Supp. 3d

446, 450 (S.D.N.Y. 2018) ("[S]ettlement agreements are contracts and must therefore be construed according to general principles of contract law.").

"Whether a district court should apply federal or state law in order to decide a motion to enforce a settlement has not yet been resolved by . . . the Second Circuit." *Lee*, 2024 U.S. Dist. LEXIS 35243, at *6 (citations omitted). The Second Circuit has noted, however, that "there is 'no material difference' between New York law and federal common law on this issue." *Id.* (citations omitted).

### III.    PLAINTIFFS' MOTION TO ENFORCE THE AMENDED SETTLEMENT AGREEMENT IS GRANTED

Plaintiffs seek enforcement of the Amended Settlement Agreement. Defendants wish to be relieved from the Authorized Medallion Requirement through an impossibility defense. They allege that factors outside of their control render their performance impossible, including the growth in the for-hire-vehicle industry (through third-party businesses such as Uber and Lyft), the COVID-19 pandemic's impact on taxicab ridership, and the decrease in demand for both private owners to purchase medallions and current private owners to operate their medallions as medallion values have "plummeted" since the parties entered into the Original Settlement Agreement in 2014. (Defs.' Opening Br. at 11.)

#### A.  Jurisdiction

As an initial matter, this Court must ensure that it has jurisdiction over the instant motions. "[W]here a federal suit has already been dismissed based on a settlement agreement, and the plaintiff thereafter asks the court to enforce the parties' agreement, the court must first satisfy itself that it has retained ancillary jurisdiction to act." *Barbecho v. Matrat LLC*, No. 15 CV 00170-LTS, 2021 U.S. Dist. LEXIS 163808, at *3 (S.D.N.Y. Aug. 30, 2021) (quoting *Romero v. New Blue Flowers Gourmet Corp.*, No. 16-CV-8753, 2021 U.S. Dist. LEXIS 43008, 2021 WL 860986, at

*2 (S.D.N.Y. Mar. 8, 2021)). This is because enforcing a settlement agreement "is more than just a continuation or renewal of the dismissed suit" and therefore "requires an independent basis for jurisdiction." *Jericho Grp. Ltd. v. Mid-Town Dev. Ltd. P'ship*, Nos. 21-2961 (L), 22-194 (Con), 2023 U.S. App. LEXIS 28818, at *2 (2d Cir. Oct. 31, 2023).

The ancillary jurisdiction doctrine may provide a court with jurisdiction so long as the court "'either (1) expressly retain[ed] jurisdiction over the settlement agreement, or (2) incorporate[d] the terms of the settlement agreement in the order' dismissing the case." *Jericho Grp. Ltd.,* 2023 U.S. App. LEXIS 28818, at *2 (quoting *Hendrickson*, 791 F.3d at 358.) Express retention of jurisdiction may be accomplished by a district court "so-ordering" a settlement agreement which contains a provision providing that the court retains jurisdiction for enforcement purposes. *See AmTrust N. Am., Inc.*, 2020 WL 8609020, at *2 (quoting *Dannhauser v. TSG Reporting, Inc.*, No. 16 Civ. 747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019)). Ancillary jurisdiction also enables district courts to resolve requests for attorneys' fees. *Kaplan v. Reed Smith LLP*, 919 F.3d 154, 157 (2d Cir. 2019).

This Court expressly retained jurisdiction over enforcement of the Amended Settlement Agreement by so-ordering the same, which incorporates language extending this Court's jurisdiction to reach the instant motions. (*See* Amended Settlement Agreement § I(J) (so-ordered by this Court which explicitly incorporates the Original Settlement Agreement); Original Settlement Agreement § 11.1 ("The Parties agree that the District Court will retain jurisdiction to enforce and administer this Stipulation and for purposes of awarding attorneys' fees and costs, if any.").)

### B. Motion to Enforce

The elements of a breach of contract claim under New York law are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Salto v. Alberto's Constr., LLC*, No. 17 CIV. 3583 (PED), 2020 WL 4383674, at *6 (S.D.N.Y. July 31, 2020). To the extent these elements are satisfied, the court has "the authority to force compliance with the terms agreed upon by the parties, whether that entails decreeing specific performance, entering a monetary judgment, or fashioning other appropriate relief." *Dannhauser v. TSG Reporting, Inc.*, No. 16-CV-00747 (CM) (DF), 2019 WL 2950142, at *7 (S.D.N.Y. June 21, 2019). Defendants concede the first three elements, only contesting whether their breaches have resulted in any injury or damages. (*See* Defs.' Opening Br. at 5–6.)

In their Opening Brief, Defendants challenge Plaintiffs' motion by (1) arguing—without any citation to legal authority—that Plaintiffs have "failed to demonstrate that they have suffered any damages or injury as a result of [D]efendants' breach[es]," (*id.* at 6); (2) asserting an impossibility (also known as "impracticability") defense as to the Authorized Medallion Requirement, claiming that unanticipated changes in the taxicab industry render their performance impracticable which purportedly excuses their breaches, (*id.* at 9); and, relatedly, (3) moving to be relieved from the Authorized Medallion Requirement,[4] (*id.* at 19.) None of these arguments have merit, and Plaintiffs are entitled to enforcement of the Amended Settlement Agreement.

---

[4] Defendants' requests for relief are not entirely consistent throughout their briefing as they jump between requests to avoid the Authorized Medallion Requirement only and requests to avoid both the Authorized and Active Medallions requirements. (*Compare* Defs.' Opening Br. at 15 ("[D]efendants are requesting to be narrowly relieved from the obligation in the [Amended Settlement Agreement] that 50% of the total number of *Authorized and Active Medallions* be wheelchair accessible."), *with id.* at 16 ("[D]efendants' respectfully request that the Court grant their cross-motion for partial relief from the provisions of the Class Action Stipulation and Amended Stipulation requiring a total percentage of the *authorized medallions* be wheelchair accessible taxis by a date certain . . . ."), *and* Defs.' Reply at 10 ("[D]efendants respectfully

### 1.  Injury

Although they argue that no injury exists, Defendants concede "that a breach occurred when defendants failed to meet [the Authorized Medallion Requirement]." (*Id.* at 5–6). They also admit that they have not satisfied the Active Medallion Requirement, having only reached "over 40% of the Active Medallions being wheelchair accessible . . . ." (*See id.* at 6–7, 15.)  In sum, Defendants confirm that they have breached critical terms of the Amended Settlement Agreement but argue that no harm has resulted.

Plaintiffs answer with a barrage of arguments which tend to show that Plaintiffs have indeed suffered an injury.  They contend that each of the following qualify as a distinct injury:  (1) the gap between the 50% accessibility promised and Defendants' actual sub-50% accessibility; (2) Plaintiffs' forfeiture of their right to seek 100% accessibility by agreeing to 50% accessibility "in reliance on Defendants' commitment to honoring their obligations"; (3) Defendants' breaches are civil rights violations which in turn requires a presumption of irreparable harm; and (4) harms caused "to members of the disability community" due to "the unavailability of wheelchair accessible yellow taxis" as set forth in their declarations.  (Pls.' Mem. of Law in Opp'n ("Pls.' Opp."), ECF No. 313, at 15–17.)

Defendants offer no retort to Plaintiffs' injury-related counters.  Consequently, Defendants are "therefore deemed to have abandoned this argument." *In re Hoti Enterprises, L.P.,* No. 10-24129, 2014 WL 1244779, at *4 (S.D.N.Y. Mar. 26, 2014), *aff'd,* 605 F. App'x 67 (2d Cir. 2015). In any event, Plaintiffs have indeed established injury.  Plaintiffs are "entitled to be placed in the position [they] would have occupied had the contract been fulfilled according to its terms": 50%

---

request that the Court grant their cross-motion for partial relief from the provisions of the Class Action Stipulation and Amended Stipulation requiring a total percentage of the *authorized medallions* be wheelchair accessible taxis by a date certain . . . .") (emphases added).)

wheelchair accessibility for all Active and Authorized Medallions. *See Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007). The injury thus lies in Defendants' breaches, which have precluded Plaintiffs from occupying this bargained-for position to which they are entitled.

Defendants then raise for the first time a different affirmative defense, that they "substantially performed under the terms of the [Amended Settlement Agreement]." (*Compare* Defs.' Opening Br., *with* Defs.' Reply Br. ("Reply"), ECF No. 315, at 2–3.) Defendants assert this brand-new defense in an attempt to seize upon one sentence in Plaintiffs' Opposition: "To the extent Defendants argue that they have substantially performed, 'the doctrine of substantial performance has no application to this dispute, where the [agreement] is free of all ambiguity in setting the deadline that [Defendants] concededly did not honor.'" (Pls.' Opp. at 16 (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 689 (N.Y. 1995).) However, omitting this affirmative defense in the first instance waived their opportunity to raise it altogether, as this Court "will not consider an argument raised for the first time in a reply brief." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) (quoting *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003)). In any event, having failed to meet its 50% accessibility requirement by 2020, or even belatedly by 2024, does not constitute anything close to substantial performance.

Plaintiffs have been denied what they bargained for. As a result, Defendants' arguments that Plaintiffs have not suffered injury fail. Consequently, Plaintiffs have established each element of their claim and are entitled to enforcement.

### 2. Impossibility Defense

Defendants fail to meet the requisite standard to cloak themselves in an impossibility defense. Under New York law, impossibility (also referred to as "impracticability") is an affirmative defense "against liability for nonperformance of a contractual obligation." *Siemens Energy, Inc. v. De Venezuela*, 82 F.4th 144, 153 (2d Cir. 2023) (citations omitted). The defense "excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." *Red Tree Invs., LLC v. Petróleos de Venez., S.A.*, 82 F.4th 161, 170 (2d Cir. 2023) (quoting *Kel Kim Corp. v. Cent. Mkts., Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987)).

To establish this defense, Defendants must demonstrate that they "took virtually every action within [their] power to perform" their contractual duties. *Siemens*, 82 F.4th at 154 (quoting *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990)). And "where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *Red Tree Invs.*, 82 F.4th at 171 (quoting *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 244 N.E.2d 37, 41 (N.Y. 1968)).

Defendants insist in their initial briefing that "seismic changes to the taxi industry between 2014 and the present day" have rendered their compliance with the Authorized Medallion Requirement impossible. (*See, e.g.*, Defs.' Opening Br. at 9.) These seismic changes, according to Defendants, include: the growth in the for-hire-vehicle industry, the COVID-19 pandemic, and the decrease in demand for both private owners to purchase medallions and current private owners to operate their medallions because medallion values have "plummeted" since 2014. (*Id.* at 11.)

But Defendants' May 2024 Letter underscores that it is possible to meet both of their obligations. With respect to the Active Medallion Requirement, if Defendants maintain their current practice—"requiring 50% of all new vehicles affiliated with an unrestricted medallion to hack up with an accessible vehicle"—they project fulfilling the Active Medallion Requirement by the end of 2030. (Defs.' May Letter at 3.) By contrast, if they implement a 100% Rule, Defendants project meeting the Active Medallion Requirement *by the end of this year*. (*Id.* at 4.)

As to the Authorized Medallion Requirement, employing a 100% Rule would garner a similar result of acceleration toward their goal. Defendants estimate that doing so would lead to meeting the requirement by the end of 2028. (*Id.*) Otherwise, retaining the current practice leaves Defendants with no concrete prediction for when they would meet the requirement, if at all—they project being at only 36.5% by 2031. (*See id.* at 4, n.8.)

Notably, the Amended Settlement Agreement requires Defendants to propose such an amendment to TLC rules and practices to facilitate meeting its accessibility obligations. Specifically, Section III(A)(3) provides: "To the extent amendments to the TLC Rules are required or deemed useful to accomplish either of [the Authorized or Active Medallion Requirements], Defendants will act as promptly as possible to propose such amendments for consideration by the TLC Commissioners." Yet, Defendants do not offer any reason that remotely reflects an impossibility to do so. The record simply reflects a lack of will and creative solution.

In short, Defendants have failed to meet any of the standards necessary to benefit from an impossibility defense. They have yet to take "virtually every action within [their] power to perform [their] duties under the contract." *Siemens*, 82 F.4th at 154. No destruction of the means of performance has occurred that renders performance objectively impossible (*e.g.,* an intervening government action making the Amended Settlement Agreement impossible to perform, *see*

*Organizacion JD Ltda. v. U.S. Dep't of Just.*, 18 F.3d 91, 95 (2d Cir. 1994)), nor has the destruction of the Amended Settlement Agreement's subject matter occurred.

Accordingly, Defendants' attempt to invoke the impossibility defense fails. Therefore, their contingent motion for partial or full relief from the Amended Settlement Agreement is **DENIED**. Consequently, Plaintiffs are entitled to enforcement of the Amended Settlement Agreement, including that Defendants shall immediately take all steps necessary to modify TLC's current 50% rule to a 100% Rule (pursuant to Section III(A)(3)) until they meet the Authorized and Active Medallion Requirements.

### 3. Additional Relief

Plaintiffs additionally request attorneys' fees and costs incurred in bringing their instant motion, and the appointment of a special master. (Pls.' Opening Br. at 15; Pls.' June Letter at 1.) Defendants do not offer any opposition to an award of attorneys' fees and costs, but they do oppose appointment of a special master. (*See* Defs.' Response Letter, ECF No. 339, at 1.)

With respect to attorneys' fees and costs, Plaintiffs argue that (1) Class Counsel[5] reserved the right to seek fees and costs in the Amended Settlement Agreement and (2) the ADA empowers a court with the discretion to award a prevailing party reasonable attorneys' fees and costs. (Pls.' Opening Br. at 14–15.)

The Amended Settlement Agreement confers Class Counsel with "the right to seek fees incurred in the course of monitoring Defendants' implementation of both the Original Class Stipulation and th[e] [Settlement Agreement]." (*Id.* at ¶ 21.) Such monitoring has culminated in Plaintiffs filing the instant motion, and thus this ground alone suffices to establish Plaintiffs'

---

[5] "Class Counsel" consists of "the law firm of Disability Rights Advocates and the law firm of Sheppard, Mullin, Richter and Hampton, LLP." (Amended Settlement Agreement § II(F).)

entitlement to attorneys' fees. *See, e.g., Essar Steel Algoma Inc. v. Nev. Holdings, Inc.*, 2023 U.S. Dist. LEXIS 134181, at *11 (S.D.N.Y. Aug. 2, 2023); *Smith v. Dig. Soc. Retail, Inc.*, No. 18-CV-6602 (RA), 2019 U.S. Dist. LEXIS 184433, at *1 (S.D.N.Y. Oct. 24, 2019).[6] Accordingly, this Court **GRANTS** Plaintiffs' request for attorneys' fees and costs. Plaintiffs shall file an application for attorneys' fees and costs with the appropriate supporting material within 60 days.

Plaintiffs' request to appoint a Special Master is **DENIED** without prejudice. Plaintiffs may renew their request for a Special Master if Defendants fail to meet the Active Medallion Requirement by March 31, 2025, or are not on schedule to meet the Authorized Medallion Requirement by the end of 2028.[7]

This Court does not see any need for such an appointment after granting Plaintiffs the other forms of relief they seek. Plaintiffs fail to identify any further action Defendants could take to meet their contractual obligations, whether now or in the future, for a Special Master to oversee. Moreover, Plaintiffs' request for a Special Master is primarily premised upon Defendants' "resistance to implementing a remedy for their breach" and "refus[al] to commit to any timelines whatsoever," (Pls.' June Letter at 3)—both of which this Court has now sufficiently addressed and will directly supervise. Defendants shall provide bi-annual reports (as prescribed in Section IV of the Amended Settlement Agreement) to Class Counsel and this Court beginning on January 10, 2025.

---

[6] Because this Court finds that Plaintiffs are entitled to attorneys' fees and costs pursuant to the Amendment Settlement Agreement, it does not reach the question of Plaintiffs' entitlement to the same under the ADA.

[7] Defendants estimate in their May 2024 Letter that approximately seven months are needed to meet the Active Medallion Requirement, which is consistent with the time period provided herein. (*Id.* at 4.) Also of note, Plaintiffs notified this Court that "Plaintiffs are willing, subject to Court approval, to relieve Defendants of their obligation to maintain a number of accessible Authorized Medallions, as opposed to Active Medallions, as long as the 100% Rule applies if and when [Inactive] Authorized Medallions become Active Medallions." (Pls.' June Letter at 2.) This Court will consider such an application if Defendants fail to make progress toward their stated reasonable goals.

## IV.    CONCLUSION

Plaintiffs' Motion to Enforce the Class Action Settlement Stipulation and Amended Class Settlement Stipulation, (ECF No. 298), is **GRANTED**. Defendants' Cross-Motion for Partial Relief from the Amended Stipulation, (ECF No. 302), is **DENIED**.

The Original Settlement Agreement and Amended Settlement Agreement remain enforceable and Defendants shall (1) immediately take all necessary steps to modify TLC's current 50% rule to implement a 100% Rule (pursuant to Section III(A)(3)) until they meet the Authorized and Active Medallion Requirements and (2) provide bi-annual reports (as prescribed in Section IV) to Class Counsel and this Court beginning on January 10, 2025.

Plaintiffs' request for attorneys' fees and costs is **GRANTED**. Plaintiffs shall file an application for attorneys' fees and costs with the appropriate supporting material within 60 days.

Plaintiffs' request for appointment of a Special Master is **DENIED** without prejudice. Plaintiffs may renew their application for a Special Master if Defendants fail to meet the Active Medallion Requirement by March 31, 2025, or are not on schedule to meet the Authorized Medallion Requirement by the end of 2028.

The Clerk of Court is directed to terminate the open motions at ECF Nos. 298 and 302.

Dated: New York, New York
　　　August 29, 2024

SO ORDERED.

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge

15